# Commonwealth ex rel v. Walton, Appellant.

*Municipalities — Ordinances — Courts — Municipal contract — Payments to contractors by two-thirds vote of council—Act of May 23, 1874, P. L. 230.*

Where by reason of equity proceedings and lack of appropriations, work upon a municipal contract has been suspended, and expenditures have been made by contractors for safeguarding the materials and tools so that the work already done should not deteriorate, and the plant be preserved, the councils of a city of the first class may by a two-thirds vote and the approval of the mayor, enact an ordinance directing warrants to be drawn to pay for work actually done and materials furnished; to pay retained percentages thereon; to pay the expenses of safeguarding and maintaining the work and plant during the cessation of the work; and to pay for hindrance and delay.

No power exists in the courts to declare such an ordinance in-

valid and of no effect, if it relates to a subject matter that councils have authority to act upon and is passed in a legal manner; nor has the city controller authority to refuse to sign the warrants directed to be drawn by the ordinance.

Argued March 20, 1912. Appeals Nos. 67, 68 and 69 by defendant, from judgment of C. P. No. 1, Philadelphia Co., Dec. T., 1911, Nos. 99, 1000 and 1001, awarding writs of mandamus in case of Commonwealth ex rel. Millard Construction Co. and McNichol Paving & Construction Co. v. John M. Walton, Controller of the City of Philadelphia. Before FELL, C. J., BROWN, POTTER, ELKIN and STEWART, JJ. Affirmed.

Demurrers to return to alternative writs of mandamus.

BREGY, P. J., filed the following opinion:

The councils of the city passed, and the mayor signed ordinances directing that warrant be drawn by certain officials of the city in favor of the different plaintiffs in matters we are now considering. The warrants were drawn and signed, but when sent to the controller to be countersigned he declined to do so.

An alternative writ of mandamus having been issued directing the controller to state why he refused to sign the warrants, he has made a return thereto, and we are now required to determine whether the reasons he gives are sufficient in law to justify his action. This is not a suit on a contract, or contracts, but a proceeding to compel the performance of the acts that the ordinances directed to be done.

The mayor of the city and the councils occupy a position in relation to legislation precisely similar to that of the governor and legislature of the state, within the scope of its authority to legislate.

We have no more power or authority in relation to ordinances than we have in relation to acts of assembly,

if as has just been said, the ordinance is within the scope of its authority to legislate.

If an act of assembly has been passed in the manner prescribed by law, and relates to a subject, that the constitution of the state does not forbid them to act upon, no court has the power to interfere with its execution.

The legislative branch of our government and the judicial are independent of each other, and it is only when the legislative act is one that the constitution prohibits that the court has authority to act, and what then can be done is to declare the act of assembly unconstitu-tional.

Exactly the same principle applies to the ordinances of the city councils. It is well to remember that what we speak of as acts of assembly are in reality the acts of the governor and the legislature, and what we call ordinances of councils should properly be designated as ordinances of the mayor and councils.

No court, in this state at least, has ever attempted to declare an act of assembly void because they did not approve of it or believed it to have been recklessly or improvidently passed, or not passed in good faith. And this for the simple reason that the court has no power to do any such thing.

If the legislature passes acts that are not in the interest of the people, acts that are reckless or improvi-dent, or in bad faith, the power to veto such acts lies with the governor, and with him alone. The power to veto does not lie with the courts. What we cannot do directly we cannot do indirectly. As has been already said, the courts have no more power to veto ordinances than it has acts of assembly. That is the right and power of the mayor alone.

If there is any popular notion that the remedy for unwise legislation by councils and the mayor is to have the court declare that in their judgment the ordinance is unwise, vicious and prejudicial to the interests of the

public, and therefore void, that notion cannot be removed too soon.

The mayor and the councilmen are elected by the people and are supposed to represent them. If they misrepresent their constituents, the remedy and the only one is defeat at the polls. If citizens do not interest themselves on election day they must take the consequences of that neglect. The remedy for faithless, venal or reckless officials lies in the ballot-box. While individual legislators can be punished for criminal acts, the joint act of a legislative body cannot be set aside by the court, even if it can be clearly shown that the act was one of bad faith and bad public policy, if the body has the power to legislate on the subject and has done so in the way the law prescribes.

It follows, therefore, that if the court cannot declare ordinances void for political reasons, the controller cannot refuse to sign these warrants because he does not approve of the policy that dictated the legislation.

The power does exist in the court to declare ordinances invalid and of no effect—if they are such as the councils have not the right to pass or if not passed in the manner prescribed by law. If the legislation is beyond their power or void by reason of improper passage it can be so declared, and will be, but if it relates to a subject-matter that councils have authority to act upon, and is passed in a legal manner, their act, when approved by the mayor, becomes the official act of the municipality. The controller and the court may not approve of, or be in sympathy with the policy of it, but neither can make it ineffective.

With this in mind, let us examine the ordinances and see to what they refer.

In a general way, the ordinances with their recitals show this to be the situation that was in existence: Contracts had been entered into by the city and the plaintiffs. The legality of some or all these contracts was attacked in equity proceedings in the courts of the

county, after considerable work had been done. In consequence of the equity proceedings alluded to, and by reason of the lack of appropriations, the work was suspended, the material on hand, tools, locomotives, and etc., were safeguarded and watched, so that the work already done should not deteriorate and the plant be preserved. A warrant had been drawn by the director against the appropriation for these contracts, which the controller refused to countersign.

With this situation before it the ordinances that we are asked to construe were passed by councils. These ordinances directed warrants to be drawn to pay for work actually done, and materials furnished; to pay retained percentages thereon; to pay the expenses of safeguarding and maintaining the work and its plant during the cessation of the work; to pay for hindrance and delay.

Was it within the power of councils to legislate upon these subjects, under the circumstances?

The Act of May 23, 1874, P. L. 230, provides that any extra compensation to any agent or contractor, after service shall be rendered, or contract made or providing for the payment of any claim against the city not authorized by law, shall be passed by a two-thirds vote of both councils and approved by the mayor.

It will be seen that councils can by a two-thirds vote and the approval of the mayor pay to contractors extra compensation or pay claims not authorized by law.

The ordinances before us were passed by a two-thirds vote and approved by the mayor.

It was decided in Bailey v. Phila., 167 Pa. 569, that an ordinance that directed a warrant to be drawn in favor of a teacher who had rendered some service to the city, although not possessing the necessary certificate to entitle her to be eligible to the position she claimed, was a valid exercise of power. And this was so decided by the Supreme Court after the same court had declared her ineligible. In Justice v. Phila., 37

Pa. Superior Ct. 267, the Superior Court held that, regardless of the legal propriety of a clerk's appointment, as the city had received his services, the legality of the ordinance which directed him to be paid would be sustained.

In neither of these cases had the plaintiff any right that could be enforced by action, and it is just that thing that councils and the mayor are authorized to act upon.

It has been spoken of as a moral obligation, etc., but the better way to put it is that the law does not require the city of Philadelphia to refrain from paying for work, materials and other services that she has received, even if the plaintiff could not force the city to pay him.

As councils, under these circumstances can direct warrants to be drawn to pay those that they consider have rendered service to the city, the next question is, can the court consider whether the amount directed to be paid is too much? To state the proposition would seem to answer it. Who is to say what the amount shall be? Certainly not the controller or the courts. That must be left to those who theoretically represent the voters of Philadelphia (even if in fact they misrepresent them)—to wit, the councils and the mayor.

The next inquiry relates to the repayment of retained percentages—that is, money retained by the city, although due a contractor, as a sort of guarantee that the work shall be properly and promptly done. Why the city could not pay that over to the contractor when it chose to do so we do not see, but be that as it may, councils certainly had a right to dispose of that money by giving it to the man it belonged to before they were legally compelled to do so.

As to the ordinances that relate to safeguarding of plant, etc., and hindrance and delay, we are of opinion that that was a matter entirely within the discretion of councils. It is possible, although not at all certain,

that the city could not have been made to pay for these items, but, as was said by our Supreme Court in the cases cited, that is not to prevent the action of councils from being sustained.

In his return the city controller claims that the supplemental contracts are illegal and void, and gives that as one of his reasons for not signing these warrants.

In our opinion it is not necessary to pass upon the legality of these contracts. For the purposes of this proceeding that question is entirely immaterial. This is not a suit on those contracts, as has already been pointed out, and the right of councils and the mayor to pass these ordinances does not depend upon that question at all.

We do not consider O'Rourke v. Phila., 211 Pa. 79, at all at variance with the cases cited and others that might be. The O'Rourke case was a suit in assumpsit on a contract, in which he agreed not to charge for extra work, but to accept a specified sum in payment for the work done. That amount was paid him, and on the allegation that he had signed the contract under protest he sought to recover for the extra work and alleged councils had made an appropriation to the department that was sufficient to pay him. That claim was decided adversely to the plaintiff on the ground that he could not sign or make a contract under protest, that he agreed to do the work for a certain sum and had received it. The case does not decide that if councils and the mayor had passed an ordinance to pay O'Rourke by a special warrant to him a sum to compensate him for the extra work, that they would have exceeded their powers; nor do we believe that in view of the Act of 1874 it ever would have been so held.

The fact that the present director has asked to have the warrants returned to him is an immaterial matter. It would be equally immaterial if the former one had done so. The director's duty in the matter was simply ministerial. Councils had the power to direct the di-

rector to draw the warrants, and he has done so. There his control over it ended. If he had originally refused to sign them he could have been made to do so.

The only way the issue of these warrants could have been prevented was for the mayor to veto the ordinances.

The city solicitor has earnestly endeavored to persuade us to take a different view of this matter than that here indicated, but our duty is to construe the law, not to make laws.

Some persons may think there ought to be the power somewhere to overrule the acts of the mayor and councils when they are not in accord with their views of propriety. Unfortunately for them, however, it does not exist.

We are of opinion that the ordinances are valid for the reasons here given, and that the duties of the controller are simply ministerial.

The demurrers are sustained; judgment is entered for the plaintiffs and the peremptory writ is directed to issue.

*Error assigned* was the judgment of the court.

*Michael J. Ryan,* City Solicitor, for appellant.—The ordinances of municipalities in Pennsylvania, whether cities or boroughs, are not similar to the acts of the legislature.

Ordinances are subject to judicial review, and where manifestly unreasonable, arbitrary or an abuse of discretion, the judiciary has power to declare them void. The discretion of the legislature, on the contrary, however unwisely exercised, unless unconstitutional, is not reviewable by the courts: Comm'rs, etc., of the No. Liberties v. No. Liberties Gas. Co., 12 Pa. 318; Kneedler v. Norristown, 100 Pa. 368; Com. v. Jackson, 34 Pa. Superior Ct. 178; Com. v. Corson. 36 Pa. Superior Ct. 7; Mountain Water Co. v. Emaus Boro., 43 Pa. Superior

Ct. 179; Com. v. R. R. Co., 23 Pa. Superior Ct. 205; Pittsburgh v. Keech, 21 Pa. Superior Ct. 548; Mayor and City Council of Baltimore v. Radecke, 49 Md. 217; Weston v. Syracuse, 158 N. Y. 274 (53 N. E. Repr. 12).

The courts can inquire into the reasonableness and good faith of the action of the municipal councils in dealing with the public money and the public property: McCord v. Pike, 121 Ill. 288 (12 N. E. Repr. 259); Fullerton v. Des Moines, 115 N. W. Rep. 611; O'Rourke v. Philadelphia, 211 Pa. 79; Kelly v. Marshall, 69 Pa. 319; Mahon v. Board of Education, 171 N. Y. 263 (63 N. E. Repr. 1107); Stemmler v. New York, 179 N. Y. 473 (72 N. E. Repr. 581); Bush v. Orange Co. Board of Supervisors, 159 N. Y. 212 (53 N. E. Repr. 1121); Chapman v. New York, 168 N. Y. 80 (61 N. E. Repr. 108); Taber v. Erie Co. Board of Supervisors, 131 N. Y. 432 (30 N. E. Repr. 177); Perkins v. Milford, 59 Me. 315; Moulton v. Raymond, 60 Me. 121; Freeland v. Hastings, 92 Mass. 570; Arbour v. Pittsburgh Produce Trade Ass'n, 44 Pa. Superior Ct. 240; State v. Cincinnati Gaslight & Coke Co., 18 Ohio St. 262.

The ordinances of November 28, 1911, directing the warrants in question to be drawn, are subject to judicial inquiry, as to their motive and effect for they are not legislative, but administrative or business acts: State v. Gaslight & Coke Co., 18 Ohio St. 262; Straub v. Pittsburgh, 138 Pa. 356; Seitzinger v. Electric Illuminating Co., 187 Pa. 539; Shaub v. Lancaster, 156 Pa. 362; State v. Gates, 190 Mo. 540 (89 S. W. Repr. 881).

Warrants directing payments for retained percentages were improper. Such claims being in contravention of an express written contract: McManus v. Philadelphia, 211 Pa. 394.

*Geo. S. Graham,* of *Graham & Gilfillan,* with him *Samuel K. Louchheim,* for appellees.—The ordinances were proper: Bailey v. Philadelphia, 167 Pa. 569; An-

derson v. Best, 176 Pa. 498; Smith v. Phila., 17 Pa. D. R. 381; Croasdill v. Phila., 18 Pa. D. R. 719.

The city controller's duty in this matter is purely ministerial: Com. v. Philadelphia, 176 Pa. 588; Com. v. Larkin, 216 Pa. 128.

Mandamus is the proper remedy: Phœnix Iron Co. v. Com., 113 Pa. 563; Com. v. Lyndall, 2 Brewster 425; Com. v. Hancock, 9 Phila. 535.

PER CURIAM, April 29, 1912:

The cases from which these appeals arise were heard together in the Common Pleas and involve the same questions. The judgment in each is affirmed for the reasons stated in the opinion of the learned President of Common Pleas No. 1, sustaining the demurrers to returns to writs of alternative mandamus and ordering writs of peremptory mandamus to issue.