## F. W. Mark Construction Co., Inc., v. Hadley, Controller.

*Mandamus—City controller—Certifying municipal contract — Ministerial duty—Bond issue—Validity—Collateral attack—Act of 1919.*

1. The controller of a city of the first class has no authority to refuse to certify a contract duly made by the city to construct a public building, on the ground that the contract is invalid because the city, in issuing bonds to pay for the work, exceeded its councilmanic borrowing capacity, since the duty of the controller, under article 12, section 4, of the Act of June 25, 1919, P. L. 597, is ministerial only, and he is required to act so long as there are sufficient funds appropriated to meet the necessary expenditures called for by the contract.

2. To permit the controller to question the validity of the increase of indebtedness would also amount to a collateral attack on the validity of the bonds.

Mandamus to compel City Controller to certify contract for public work. C. P. No. 4, Phila. Co., June T., 1927, No. 14288.

*Morris Wolf*, for complainant; *S. Davis Wilson*, Deputy Controller, *p.p.*

GORDON, JR., J., Aug. 29, 1927.—This is a proceeding in mandamus brought by the F. W. Mark Construction Company, Incorporated, the plaintiff, against the Controller of the City of Philadelphia, the defendant, to compel the defendant to certify, under article 12, section 4, of the City Charter, a contract between the plaintiff and the City for work in connection with the completion of the City Hall Annex. The contract was entered into under an ordinance passed June 13, 1927, authorizing the work and appropriating funds therefor from the proceeds of a councilmanic loan of $4,250,000, authorized by the Ordinance of May 23, 1927, and the bonds for which have been sold and the proceeds thereof acquired by the City. The refusal of the defendant to certify the contract is based, as shown by the return to the alternative writ, upon the ground that the Ordinance of May 23, 1927, authorizing the work, is unconstitutional and the loan illegal, the City having exceeded its councilmanic borrowing capacity, when the loan was made, by $3,098,622.89.

Before considering the controlling question in the case, it may be well to note that, although the defendant's return asserts that the borrowing capacity of the City had been exceeded, as stated above, by approximately $3,000,000, the detailed statement of the councilmanic borrowing capacity attached to and made a part of the return, which purports to show this excess, contains items of charge against the councilmanic borrowing capacity which it is doubtful should be so charged. For instance, the three items relating to loans to cover the cost of the erection and construction of the Delaware River Bridge and its approaches, which aggregate $9,484,662, seem to have been electoral loans, and if such be the case, this sum, even under the decision in the Schuldice Case, 251 Pa. 28, should be deducted from the statement of the borrowing capacity, and would in itself disclose that the City had sufficient borrowing capacity when the loan in question was authorized. There are numerous other items of charge in the defendant's statement of the City's debt which are similarly more or less open to question, and the return is not sufficiently specific with regard to those items to enable us to form a definite conclusion upon the propriety of their inclusion in the statement of the councilmanic borrowing capacity of the City. As we view the controlling question in the case, however, it is unnecessary to make a definite decision upon this phase of the return. It will be sufficient to point out that a careful analysis of the return in these particulars could only be made by the ascertainment of facts which should have been, and are not, set forth in it. Therefore, we are not prepared to hold that the City exceeded its borrowing capacity when the loan was authorized and floated.

F. W. Mark Construction Co., Inc., v. Hadley, Controller.

This brings us to the main question in the case. The duties of the City Controller with respect to the certification of contracts are prescribed in article 12, section 4, of the Charter Act of June 25, 1919, P. L. 597, which provides that "every contract involving an appropriation shall designate the item upon which it is founded, and shall be numbered by the City Controller in the order of its date and charged, as numbered, against such items, and so certified by him before it shall take effect as a contract, and shall not be payable out of any other fund, and if he shall certify any contract in excess of the appropriation properly applicable thereto, the City shall not be liable for such excess, but the City Controller and his sureties shall be liable in damages for an amount not exceeding such excess, which may be recovered by the contracting party aggrieved."

It is well established by an abundant judicial authority that these duties of the City Controller are purely ministerial in character. In Com. v. George, 148 Pa. 463, the Controller of the City of Williamsport, whose duties were prescribed by the act applicable to him, in language closely similar to the act under which this defendant operates, refused to certify a contract for the construction of a sewer, upon the ground that the city had no right to pass the ordinance authorizing it, and was compelled by mandamus to do so. The Supreme Court, in discussing the nature of the controller's duties in regard to the matter, said:

"In the case at hand, if the duty of the controller to certify contracts is discretionary, both the contractor and the city is [are] without remedy. It gives the controller a final veto wherever an appropriation of money is involved. That such a power should be intrusted to the city controller, who requires no qualification except the qualifications prescribed by the act of assembly for city treasurer, seems marvelous. We cannot, from a careful reading of the act, come to any such conclusion. The last sentence of section 5 of the act above quoted uses the following imperative language: 'It shall be the duty of the controller to certify contracts for the payment of which sufficient appropriations have been made.' There is nothing whatever here which requires judgment and discretion. It is true he must have knowledge of a fact, to wit, the fact that a sufficient appropriation has been made. This knowledge requires neither judgment nor discretion. To perform clerical duties, in most instances, requires a knowledge of some fact or facts. Where such fact or facts are acquired by mere inspection without the exercise of judgment, it cannot be said to confer on the party judicial or discretionary duties.

"We do not undertake to say that none of the duties of the controller prescribed by the Act of 1889 are discretionary. . . . All we decide is that his duties under the fifth section of article IX of said act, in relation to certifying contracts, are ministerial only."

In Com. v. Larkin, 216 Pa. 128, Mr. Justice Mestrezat reasserted the ruling of the court in Com. v. George, 148 Pa. 463, in the following language: "If the contract be on its face regular and the requirements of the statute in connection therewith have been fully met, the controller is without choice in the matter; it becomes at once his duty in such case to number the contract according to its date, charge it against the proper item of appropriation and certify it accordingly. No opinion or so-called discretion of the controller can justify him in withholding his certificate from such a contract."

To the same effect are Com. v. Philadelphia, 176 Pa. 588; Com. v. Walton, 236 Pa. 220; Com. v. Tice, 272 Pa. 447.

F. W. Mark Construction Co., Inc., *v*. Hadley, Controller.

The only ground upon which a controller may refuse to certify a contract is that the appropriation for it is insufficient. A determination of this question requires no exercise of judgment or discretion beyond a mathematical calculation of the amounts already charged against a particular item. As has been said in other cases, to permit a controller, in certifying a contract, to pass judgment upon the validity of the action of either the executive or legislative branches of the Government would be to give him a veto upon all municipal activities, which, however desirable it might appear, has not been conferred upon him by law.

The position taken by the defendant is untenable, also, for the further reason that it is, in substance, an attempt collaterally to attack the validity of the bonds from the sale of which funds to meet this contract were raised. The defendant does not pretend that the money is not in the City Treasury or that the contract was not authorized and an appropriation therefor made by Councils. The sources from which the City derives its revenue are not the concern of the Controller when certifying contracts supported by a previous appropriation. The money is in hand. It is the property of the City, and, whatever may be the rights of the bondholders from whom the money was derived, it would create an intolerable situation to permit the Controller to question the origin of the City's funds every time a contract involving their expenditure came before him for certification. The power to determine where and how the City's moneys shall be expended rests with Councils and the executive department, and the Controller's sole function is to insure that the money shall be in hand when an expenditure is made.

We are, therefore, of opinion that the certification of the plaintiff's contract by the defendant is a ministerial duty, which, in his return, he has shown no valid reason for not performing, and that the plaintiff is accordingly entitled to the peremptory writ of mandamus which he seeks. The demurrer is sustained and judgment is entered for the plaintiff thereon.

Let the peremptory writ of mandamus issue as prayed for forthwith.