## Harris v. City of Philadelphia et al.

*Saul, Ewing, Remick & Saul,* for plaintiff.

*James Francis Ryan, Joseph P. Gaffney* and *Joseph R. Embery,* for intervening defendants.

McDEVITT, P. J., Dec. 30, 1929.—This cause came on to be heard on argument *sur* exceptions of defendants and intervening defendant.

Counsel for the plaintiff has advanced two theories to support his complaint. First, that the Ordinance of June 14, 1929, is illegal. Second, that the Director of City Transit abused his discretion. The learned Chancellor decided the first in favor of the plaintiff and omitted to decide the second question either way.

We will discuss these two theories in the order stated.

### I. The Ordinance of June 14, 1929.

Section 6 of the Act of May 23, 1874, P. L. 230, provides: "All stationery, printing, paper and fuel used in the councils, and in other departments of the city government, and all work and materials required by the city, shall be furnished, and the printing and all other kinds of work to be done for the city shall be performed under contract to be given to the lowest responsible bidder, under such regulations as shall be prescribed by ordinance; and it shall be the duty of councils forthwith to enact such ordinances."

From the time of the enactment of this law until very recently the method employed and the common practice prevailing has been for the awarding official to receive all bids offered at a public letting and then to determine the "lowest responsible bidder." By this method the factors of responsibility and amount of the bid were intermingled, and an estimate made, of which was the lowest responsible bid, with all of these factors entering into the determina-

tion and without such segregation of the various elements entering into the award as would enable it to be made with something like scientific precision.

Prequalification of bidders for city contracts, under the Ordinance of June 14, 1929, has introduced no new principle into the conduct of city business, but consists only of a new method of applying an old principle. This is done by segregating the two elements entering into the question of "lowest responsible bidder," making the determination of responsibility precede the estimate in dollars and cents as shown by the bids.

The Ordinance of June 14, 1929, is a wise and well considered piece of legislation, whose design and effect will be to substitute a scientific for a haphazard method of determining the lowest responsible bidder, and it has the further recommendation of being distinctly authorized by the provisions of the Act of 1874, already quoted. It has long been established that where an ordinance is passed under the sanction of an act of assembly, its reasonableness is not open to inquiry and it cannot be set aside for that reason: Ligonier Valley R. R. Co. v. Latrobe Borough, 216 Pa. 221, 223. To the same effect, see West Chester v. P. T. Cable Co., 227 Pa. 384, 387; Canton Borough v. Williams, 67 Pa. Superior Ct. 239, 246; Setzer v. Pottsville, 73 Pa. Superior Ct. 573, 576. And even though the statutory language be general in its scope, the courts will not interfere with a municipality's exercise of conferred power, if such exercise be reasonable, lawful and constitutional: Duquesne City v. Fincke, 269 Pa. 112, 121.

"An ordinance cannot be judicially declared invalid because its provisions are impracticable, unjust and unequal; the remedy is in the law-making, not the law-interpreting power:" Hadtner v. Williamsport, 15 W. N. C. 138.

Substantially to the same effect are the cases of Com. v. Walton, 236 Pa. 220, and Vare v. Walton, 236 Pa. 467.

In Com. v. Walton, 236 Pa. 220, the subject is considered at length. There the court said (page 222):

"If an act of assembly has been passed in the manner prescribed by law, and relates to a subject that the Constitution of the State does not forbid them to act upon, no court has the power to interfere with its execution. The legislative branch of our government and the judicial are independent of each other, and it is only when the legislative act is one that the Constitution prohibits that the court has authority to act, and what then can be done is to declare the act of assembly unconstitutional.

"Exactly the same principle applies to the ordinances of the City Councils.

"It is well to remember that what we speak of as acts of assembly are in reality the acts of governor and the legislature, and what we call ordinances of councils should properly be designated as ordinances of the Mayor and Councils."

The same doctrine was held by Judge Brégy, and was affirmed per curiam in Vare v. Walton, 236 Pa. 467.

In Com. v. Puder, 261 Pa. 129, it is decided that "every presumption is in favor of the validity of the exercise of legislative power, and the act must be upheld unless its provisions plainly violate a constitutional mandate." That this applies as well to councilmanic legislation where it is pursuant to statutory authority, is well settled.

The legislature (state or municipal) is the sole judge of the wisdom and expediency of a statute or ordinance and the necessity for its enactment. Whether such legislation be wise, expedient or necessary is without importance to the court in determining its validity: Com. v. Puder, supra; Shaffer v. Public Service Commission, 268 Pa. 456.

As late as April 15th of this year, in Schuck v. School District, 296 Pa. 408, 411, it was stated that, under the law, the duty or the discretion vested in the awarding officer is "to determine who are and who are not responsible bidders."

Section 6 of the Act of 1874, supra, requires that "contracts be let to the lowest responsible bidder" and "under such regulations as shall be prescribed by ordinance." Prequalification merely moves up the process of determining responsibility to a point preliminary to the bidding.

City Council, in response to the recommendation of Mayor Mackey's "City Contract Committee," and in harmony with modern thought upon the subject, has, by the Ordinance of June 14, 1929, prescribed that the determination of who are and who are not responsible bidders shall be made before and not after the public receipt of bids. Whenever a statute and city ordinances, made pursuant thereto, provide when and the manner in which city contracts shall be made, it is necessary to strictly follow such provisions: Harris v. Philadelphia, 283 Pa. 496 (1925).

The Ordinance of June 14, 1929, provided, in section 2, as follows:

"Section 2. Not later than ninety-six hours prior to the time of opening bids for the construction of public work, the Director or other official in charge of letting any contract therefor shall require and receive from any and all known prospective bidders a sworn statement in answer to a questionnaire or inquiry in standard form, showing that such intended or prospective bidder has the necessary facilities, experience and financial resources to perform the work in a proper and satisfactory manner within the time stipulated. Such statements must designate and describe the plant, equipment and facilities of the bidder, relate his experience in doing the same or similar work and disclose his financial resources, specifying the amount of his liquid and other assets and liabilities and the number and amount of his other existing contracts or commitments, including and indicating those with the City; said statements shall be confidential. Should the information so required be refused or omitted to be given, or should it, in the judgment of the awarding officer, reveal that the prospective bidder is not sufficiently equipped or qualified to enter into or perform the said contract, no bid therefor from such bidder or bidders shall be received or scheduled and the awarding official shall forthwith notify the proposed bidder thereof. If the proposed bidder be dissatisfied with such rejection, he may, within twenty-four hours after the receipt of such notice, request a hearing before a board to be composed of the said awarding officer and two other heads of departments, chiefs of bureaus of other departments, or other city officials conversant with construction work and to be designated by the mayor, or, in the absence of the mayor, by a director of any city department, in accordance with the order prescribed by section 1 of article III of the Act of Assembly approved June 25, 1919, entitled 'An act for the better government of cities of the first class of this Commonwealth,' as amended. At such hearing, further evidence may be given with respect to the financial responsibility, plant, equipment, facilities and experience of the said prospective bidder or of other relevant matter as he may deem proper. After hearing the additional evidence or matters so presented, the said board may affirm, reverse, revise or modify the decision of the awarding official, in its discretion."

It will be noted that, under the provisions of this ordinance, a duty was imposed upon the "awarding official," who in this instance was the Director of the Department of City Transit, to exercise his "judgment" in determining whether "the prospective bidder is not sufficiently equipped or qualified to

enter into or perform the said contract," and, if so, "no bid therefor from such bidder or bidders shall be received or scheduled, and the awarding official shall forthwith notify the proposed bidder thereof." The ordinance then provides that if the prospective bidder be dissatisfied with the selection of the "awarding official," he may, within twenty-four hours, request a hearing before a board to be composed as therein provided and appointed by the mayor or some one in his behalf. Before such board, the prospective bidder might offer further evidence "with respect to the financial responsibility, plant, equipment, facilities and experience of the said prospective bidder or of other relevant matters as he may deem proper. After hearing the additional evidence or matters so presented, the said board may affirm, reverse, revise or modify the decision of the awarding official, in its discretion."

This procedure was taken in this case. The three bidders whom the Director of City Transit found, in his judgment, not to be qualified to become bidders were duly notified in accordance with the ordinance, and they requested a hearing, and, after such hearing, the decision of the Director of City Transit was affirmed. No further action or appeal was taken by these prospective bidders. Two of them refrained from making any bids, and the remaining one (Golder) submitted a bid which was higher than that of the Keystone State Construction Corporation, the lowest bidder, but Golder's bid was not scheduled and was withdrawn by Golder.

Plaintiff's bill does not aver *(a)* the invalidity of the Ordinance of June 14, 1929; he asserted it at trial only after pressure; *(b)* nor that any prospective bidder did not have knowledge of that ordinance; *(c)* nor that any prospective bidders were precluded from bidding because of that ordinance. As issues in an equity suit must be determined by the pleadings, and the pleadings raise no question as to the validity of the Ordinance of June 14, 1929, plaintiff's bill should have been dismissed on that ground.

As the only issue raised by plaintiff's bill is the allegation that the Director of City Transit declared that he would receive bids only from those who had complied with the Ordinance of June 14, 1929, and there being no other course for the Director to pursue under the provisions of the Ordinance of June 14, 1929, the language of the ordinance being mandatory that no bids shall be received except from those who have prequalified as bidders, and plaintiff making no averments attacking the validity of that ordinance, no allegation that the questions contained in the questionnaire or any other conditions imposed by the Director of City Transit were burdensome or unfair or improper or not in accordance with the ordinance, and no allegations of any irregularity in proceedings thereunder, or any lack of opportunity for bidders to establish their fitness and qualifications, it is submitted that plaintiff's bill should have been dismissed on that ground.

As the Supreme Court said in the former case of Harris *v.* Philadelphia *(supra)*, "all persons knew that it was an essential requirement and one which must be strictly performed and that the said official was without discretion in the matter."

The only discretion which the Director of the Department of City Transit had was in the exercise of his judgment in determining whether the prospective bidder was "sufficiently equipped or qualified to enter into or perform the said contract," and even as to this discretion the prospective bidder had a right to a review by a board as provided by the ordinance, and this course was actually pursued by the prospective bidders who were not qualified in the judgment of the Director of City Transit, and the board affirmed the decision of the Director.

The Ordinance of June 14, 1929, is reasonable and legal and fully authorized by the Act of 1874. There was no necessity for the proposed Act of 1929, and the main objection to that bill, expressed in the Governor's veto, "that it places unlimited discretion in one city official to disqualify a bidder without giving him any opportunity for redress if the one's decision was arbitrary, unreasonable or unjust," is overcome by the appeal provision of that ordinance.

One of the main reasons urged by counsel for the plaintiff and stressed by the learned Chancellor in making his decision is that the ordinance provides no common standard for ascertaining the responsibility and fitness of bidders.

The answer to this is two-fold.

In the first place, the making of such standards is an executive and not a legislative function; the discretion to be exercised in the letting of contracts is the discretion of the awarding official, which is purely executive in its character and should not be, and cannot be, controlled or regulated by ordinance. In the Charter Act of June 25, 1919, P. L. 581, section 2 *(b)*, article III, provides that "*(b)* The Council shall provide by ordinance for the proper and effective conduct of the affairs of the City by the Mayor and several departments and boards thereof, including all necessary expenditures, but shall not pass any ordinances directing or interfering with the exercise of the executive functions of the Mayor, departments, boards or heads of departments or officers thereof."

No standard could be laid down which could solve or tend to solve the purpose in view.

Here the ordinance directs, as it should, the exercise of the discretion of the awarding officer subject to appeal to an impartial board. To say that it must go further than this and say what degree of fidelity, of honesty of purpose, of previous experience, of fixed and floating capital must constitute responsibility would be at once to take from the Director his function to pass upon these questions and to apply an impossible criterion.

No language could be more pertinent to the situation than that of the Supreme Court in the case of Com. ex rel. *v*. Mitchell, 82 Pa. 343, in which Mr. Justice Gordon, speaking for that court, said: "A dishonest contractor may impose work upon the city in spite of the utmost caution of the superintending engineer; apparently good, and even capable of bearing its duty for a time, which in the end may prove to be a total failure and worse than useless. Granted that from such a contractor pecuniary damages may be recovered by an action at law; this is, at best, but a last resort, that often produces more vexation than profit—a mere patch upon a bad job; an exceedingly meager compensation, at best, for the delay and incalculable damage resulting to a great city from the want of a competent supply of water. The city requires honest work, not lawsuits."

In each instance, even though formerly recognized reputable contractors should propose to bid, they must bid with all others, and if a new bidder is found to be in all respects qualified for the undertaking, his bid in competition with that of previous contractors with the City will come into open comparison, and if the new man be found qualified and should he prove the lowest bidder, his responsibility having first been ascertained, the contract would automatically be awarded to him.

As to the danger which the learned Chancellor sees of political or other pressure in the prequalification, it is difficult to follow his reasoning.

Surely the opportunities for favoritism and political pressure are less where the clear-cut inquiry as to responsibility stands by itself and must be decided

as that without reference to any matter involved in the figures of the bidders, which at that stage cannot be known.

The Ordinance of 1929 is fully authorized by the permissive language of the Act of 1874, and fully complies therewith.

## II. Abuse of discretion.

The learned Chancellor in his decision stated that the question of abuse of discretion had been raised by the bill, but he did not decide it. His decision was based entirely upon his view that the pertinent section of the Ordinance of 1929 was invalid, and, therefore, that the bids were irregular and improper.

In Com. ex rel. v. Mitchell, 82 Pa. 343 (1876), a part of the decision in which has already been cited, the Supreme Court said in extenso:

"Now the court below, though they found, under the evidence, that the relators were responsible in all points in which the city had a right to inquire, yet they held that the word 'responsible,' as employed in the act, when applied to contracts, requiring for their execution, not only pecuniary ability, but also judgment and skill, imposes, not merely a ministerial duty upon the city authorities, such as would result did their powers extend no further than to ascertain whose was the lowest bid, and the pecuniary responsibility of the bidder and his sureties, but also duties and powers which are deliberative and discretionary. In this we concur with the court below. For it is scarcely open to doubt, but that word under consideration, as it is used in the statute, means something more than pecuniary ability. In a contract, such as the one in controversy, the work must be promptly, faithfully and well done—it must, or ought to be conscientious work; to do such work requires prompt, skillful and faithful men. A dishonest contractor may impose work upon the city, in spite of the utmost caution of the superintending engineer, apparently good, and even capable of bearing its duty for a time, which in the end may prove to be a total failure and worse than useless. Granted, that from such a contractor pecuniary damages, may be recovered by an action at law; this is at best but a last resort, that often produces more vexation than profit—a mere patch upon a bad job; an exceedingly meager compensation, at best, for the delay and incalculable damage resulting to a great city from the want of a competent supply of water. The city requires honest work, not lawsuits. Were we to accept the interpretation insisted upon by the relators, the difference of a single dollar, in a bid for the most important contract, might determine the question in favor of some unskillful rogue as against an upright and skillful mechanic. Again we know that, as a rule, cheap work and cheap workmen are but convertible terms for poor work and poor workmen, and if the city, for the mere sake of cheapness, must put up with these, it is indeed in a most unfortunate position. It is unnecessary, therefore, to resort to authority for the condemnation of the interpretation, by which the ruling of the court below is sought to be overturned, for it is opposed to the unbiased judgment of all reflecting men, whether lawyers or laymen, and its adoption would be productive of far more evil than good. Agreeing then, as we do, with the Common Pleas that the duty imposed upon the respondents was deliberative and discretionary, we must also admit the conclusion reached by that court, to wit: that the writ of mandamus will not lie. For it is settled beyond controversy, that where the complaint is against a person or body that has a discretionary or deliberative function to exercise, and that person or body has exercised that function, according to the best of his or its judgment, the writ of mandamus will not be granted to compel the undoing of that which

has been done: Griffith *v.* Cochran, 5 Binn. 87; Com. ex rel. Watt *v.* Perkins, 7 Barr, 42."

The definition therein given of "lowest responsible bidder" and the "deliberative" and "discretionary" duties and powers of the awarding official have been followed by a long line of decisions down to and including Schuck *v.* School District, 296 Pa. 408.

When discretion is given to the head of a department or other city official under ordinance pursuant to statutory authority, the exercise of that discretion cannot be reviewed by a court unless plaintiff shows an abuse of that discretion. As was said by Mr. Justice Kephart in Hibbs *v.* Arensberg et al., 276 Pa. 24, 26, "the presumption is that their acts are on such considerations and their decisions reached in a legal way after investigation. When their actions are challenged, the burden of showing to the contrary rests on those asserting it, and it is a heavy burden; courts can and will interfere only when it is made apparent this discretion has been abused. Abuse of discretion does not, as a rule, come from unwise acts or mistaken judgment, but generally springs from improper influences, a disregard of duty or a violation of law."

A review of cases in Pennsylvania as well as in other jurisdictions is to be found in the case of Relly *v.* City of Easton et al., 12 D. & C. 17.

Plaintiff's bill does not contain any averments of fraud, improper influences, corruption or abuse of discretion under the Ordinance of June 14, 1929, and nowhere in plaintiff's bill is this ordinance referred to.

In the present case, the language of the ordinance was mandatory that "no bid therefor from such bidder or bidders shall be received or scheduled" where the prospective bidder was found by the Director of City Transit to be not sufficiently equipped or qualified to enter into or perform the said contract, unless, of course, the Board of Review modified the decision of the Director of City Transit. The mandatory language of the ordinance which prevented the Director of City Transit from receiving any bid unless the prospective bidder was qualified under the ordinance was called to the attention of all prospective bidders in "Information for Bidders." In paragraph 3 of the "Information for Bidders" it is stated:

"As required by Ordinance approved June 14, 1929, set forth in full in Paragraph 16 of these Specifications, each bidder will be required to submit to the Director, not later than ninety-six (96) hours prior to the time of opening bids, a sworn statement of his facilities, experience and financial resources upon the Department's questionnaire form issued with these Specifications for the purpose of determining his qualifications and responsibility. Should the information so required be refused or omitted to be given, or should it, in the judgment of the Director, reveal that the prospective bidder is not sufficiently equipped or qualified to enter into or perform the said contract, no bid from such bidder or bidders will be received or scheduled, and the Director will forthwith notify the proposed bidder to that effect."

In paragraph 16 of the special specifications annexed to the "Information for Bidders," special attention is called to the Ordinance of June 14, 1929, and a full and complete copy of that ordinance is set forth in that paragraph of the special specifications.

The advertisements for bids for this work contained the following notice:

"The attention of prospective bidders is called to 'Special Notice to Bidders,' page 3 of the specifications. The Director's office will not accept questionnaires after 11 A. M. (Eastern Standard Time), Monday, July 15, 1929, as

indicated in Section 2, Page 15, of the special specifications, Contract No. 301, Ordinance approved June 14, 1929."

The "Special Notice to Bidders" referred to in the advertisements and found on page 3 of the specifications was as follows:

### "Special Notice to Bidders.

"The attention of prospective bidders is called to the provisions of the Ordinance approved June 14, 1929, set forth in full in a following section of these Specifications, relating to and regulating proposals for work and material to be furnished to the City of Philadelphia; providing the amount, character and disposition of deposits to be made with such proposals; providing for the pre-qualification of prospective bidders for contracts for construction work by requiring answers to inquiries or questionnaires in advance of bidding showing the fitness of such prospective bidders to perform the said contracts; authorizing the refusal to receive or schedule bids where such information is refused or not given or when it appears that the said proposed bidder is not sufficiently qualified and fitted to perform the said contracts; and repealing ordinances inconsistent therewith."

The action of the Director of City Transit was not based on any misconception of law, ignorance through lack of inquiry into facts necessary to form intelligent judgment, or the result of arbitrary will or caprice, the tests laid down in Hibbs v. Arensberg, supra, for judicial interference with the discretionary power of the awarding official. The plaintiff failed to meet the burden imposed by law upon those who attack the acts of executive officers. He failed to show any improper influences, disregard of duty or a violation of law: Hibbs v. Arensberg, supra. He failed either to allege or to prove fraud or misconduct on the part of the awarding official: Hiorth v. Chester, 282 Pa. 387. Abuse of discretion not having been proved cannot and will not be presumed.

With reference to the contention of the plaintiff respecting the supposed secrecy with regard to the matter contained in the questionnaire, the practice and the law in this respect are precisely the same as they always have been.

By an Ordinance approved March 27, 1924, page 70 of the Ordinances of that year, it was provided that, after the receipts of the bids, any bidders "must supplement their bids with a sworn statement, which is to be confidential, showing that they have the necessary facilities, experience and financial resources to perform the work in a proper and satisfactory manner," etc.

The foregoing ordinance was repealed by an Ordinance of March 21, 1928, page 111, providing in similar manner, after the receipt of bids, for a sworn statement, "which is to be confidential."

This, in turn, was superseded by the Ordinance of June 14, 1929, which differed from its predecessors only in that information required of proposed bidders was to be furnished in a questionnaire in anticipation of the receipt of bids instead of being required after the bidding.

Indeed, long before the passage of any of these ordinances, it always has been the sane procedure and practice of the executive authorities of this city and elsewhere to inquire into the experience, facilities, resources and general adaptability of proposed contractors to do the work before the contract should be let to them, and the results of such inquiry have always been regarded as confidential information not to be divulged to bidders or others.

The bids have at all times been open to inspection by anybody and everybody, being made matters of public record, but the information as to the pri-

vate affairs of proposed bidders has not been and should not be open to their rivals or to the public at large.

No statutory law and no judicial interpretation has ever gone to such a length as to permit public authorities to deter bidders by making knowledge of their most intimate and private trade conditions available to anybody who chose to take advantage of such an opportunity to obtain illicit information. To do so would be virtually to close the door to responsible bidders and to open it wide to those of opposite character.

In the case of Com. v. Walton, 236 Pa. 220-223, which was affirmed by the Supreme Court, it is made plain that in matters of this kind the question is not whether the court would have reached the same conclusion as the executive, but whether the latter acted deliberately, honestly and with proper consideration of conflicting elements, if such there were.

A very similar matter was recently before this court in the case of Rodin v. Philadelphia et al., and that case, involving questions and principles so similar to this one and the question whether a contract should be awarded to a particular bidder, was decided on the theory that the courts would not in such instances review and disaffirm discretionary and deliberative judgment of the executive officer.

Exceptions of defendants and intervening defendant are sustained. The plaintiff's bill is dismissed. Plaintiff to pay costs.