1912.]　Assignment of Error—Opinion of the Court.

*Error assigned* was the judgment of the court.

*John S. Rilling,* with him *Clark Olds* and *H. L. Moore,* for appellant.

*C. L. Baker,* for appellee.

PER CURIAM, May 13, 1912:

This action was brought on a policy of insurance issued by the appellee. A jury trial was waived, and no one of the seven facts found by the court below is assigned as error. From them, and especially from the sixth, the conclusion was inevitable that the plaintiffs could not recover, and the judgment for the defendant is, therefore, affirmed.

---

# Vare *v.* Walton, Appellant.

*Municipalities—Contracts—Extra compensation—Act of May 23, 1874, Sec. 5, P. L. 230.*

1. The Act of May 23, 1874, Sec. 5, P. L. 230, which provides that "no ordinance shall be passed, except by two-thirds vote of both councils, and approved by the mayor, giving any extra compensation to any public officer, servant, employee, agent or contractor after services shall have been rendered or contract made" is a valid law; and if such an ordinance has been passed by a two-thirds vote of both councils, and approved by the mayor, the courts have no power to declare it void, although the contract with the contractor to whom the extra compensation was voted, may have been void, and the city under no obligation to pay anything; nor can the court say that the amount directed by the ordinance to be paid was too large or too small.

2. Such an ordinance is a final and accomplished act, and must stand until repealed, and the power to repeal it does not lie with the court.

Argued April 25, 1912.   Appeal, No. 137, Jan. T., 1912, by defendant, from order of C. P. No. 1, Phila. Co., Dec. T., 1911, No. 1007, sustaining demurrer to return to alternative mandamus in case of Edwin H. Vare v. John M. Walton, City Controller of the County of Philadelphia.   Before FELL, C. J., POTTER, ELKIN, STEWART and MOSCHZISKER, JJ.   Affirmed.

Demurrer to return of alternative mandamus. BREGY, P. J., filed the following opinion:

From the petition these facts appear.   On May 21, 1909, a contract was entered into between the plaintiff, Vare, and the city of Philadelphia, to do certain work in relation to the building or improvement of League Island Park.   This contract was followed by several additional or supplemental contracts between the same parties.

A large amount of the work included in these contracts was done and some of it paid for.   During the progress of the work, a bill in equity was filed in Common Pleas No. 4 by certain taxpayers alleging, among other things, that the original contract was procured by a fraudulent conspiracy and that the supplemental or additional contracts were illegal and void.

Pending the court's action in that proceeding, the executive and ministerial officers of the city declined to pay Vare any more money for the work already done. This condition of affairs was brought to the attention of the city councils, and after an examination of the situation as indicated by the preambles, ordinances were passed by both branches of councils by a two-thirds vote and signed by the mayor, directing that warrants be drawn in favor of Vare for $247,123.24, to pay him for the work he claimed he had already done and for which he had not been paid.

The warrants so directed to be drawn were drawn and signed by the director, but the city controller refused to countersign them.   The plaintiff, Vare, then insti-

tuted this proceeding to compel the countersigning of the warrants and the alternative writ issued.

The returns of the city controller and the mayor may be considered together.

It is alleged by the mayor that the original contract was procured by fraud and conspiracy.

This proceeding, however, is neither a suit to enforce the contract and allow Vare to go on with the work, nor a suit to annul the contract and compel him to stop the work. It is a proceeding to require the controller to approve the warrants drawn by direction of the ordinance to pay Vare for work already done.

It is not claimed that the ordinances passed in 1911, that we are asked to enforce, were induced by any fraud at all.

The claim of fraud is alleged as to the contract entered into in 1909.

In our opinion, the question as to whether the work was done under a legal or illegal contract or contracts does not control this case. Work was done, the city may have been under no legal obligation to pay for it, but the city councils and the mayor have chosen to direct that a certain amount fixed by them should be paid. The only questions that we can consider are,

1st. Had the city councils the legal right to legislate upon the subject?

2nd. If so, has the legislation been passed in a proper way?

In answer to the first question, it only seems necessary to quote the provisions of the Act of May 23, 1874, Section 5:

"No ordinance shall be passed except by a two-thirds vote of both councils, and approved by the mayor, giving any extra compensation to any public officer, servant, employee, agent or contractor after services shall have been rendered or contract made, nor providing for the payment of any claim against the city, without previous authority of law."

Stated in another way, the act requires that any ordinance to give a contractor any extra compensation after contract made or services rendered, or providing for the payment of any claim against the city not previously authorized by law shall be passed by a two-thirds vote of both councils and approved by the mayor.

Under the authority given to councils by this act, it would seem to be clear that they are given the power to pay extra compensation to contractors or to pay bills for work done for the city under illegal contracts or even when there was no contract.

This act was construed by the Court of Common Pleas No. 4 of this county, in an opinion by Judge WILLSON, in the case of Smith v. Phila., 17 Pa. D. R. 381, in which a general ordinance was passed directing that all work theretofore done under supplemental contracts should be paid for. The court said:

"In our judgment, the Act of 1874 contemplated and authorized payment to be made to a contractor for work or services not previously authorized by law, in case an ordinance should be passed by a two-thirds vote of both branches of councils and approved by the mayor, only in individual cases wherein the contractor should be specifically named and in which it should be made to appear that the merits of his particular case had been considered."

See also Bailey v. Philadelphia, 167 Pa. 569, and Justice v. Philadelphia, 37 Pa. Super. Ct. 267.

It has been said that this act relieves the city of the necessity of being dishonest, and does not require it to refuse to pay for work simply because it cannot be made to pay for it by a suit at law.

The wisdom of this act is not for us to criticise.

It might have been better for the legislature never to have given that power to the councils of the city, but the answer is they have given it.

The power was therefore in the councils to pass the ordinance.

As has already been stated, the requirements of this kind of legislation, to wit, a two-thirds vote and the approval of the mayor, has been complied with after the matter has been investigated by councils.

The ordinances consequently have been legally passed as to form, and were in relation to a matter on which councils and the mayor were authorized to act.

The contention of the mayor's return that the additional or supplemental contracts are illegal and void, it is not necessary to say much about, as that matter was discussed in our opinion in the McNichol-Millard cases, recently filed. We there held that it was entirely unimportant whether the contracts are void or not, as this is not a suit to enforce the contracts—we would add, however, that it is claimed that before these contracts were entered into the advice of the then city solicitor was asked and given in relation to them. He held they were legal that the city had authority to make them. Acting on that advice, the work was proceeded with and the city paid for the work as it was done until the filing of the bill in equity alluded to, when, probably fearing what the end of the litigation might be, the director refused to pay for work admittedly done. Under these circumstances, councils might well feel there was a moral duty if not a legal one to pay.

In the opinion filed a few days ago, already alluded to, we held that we could not go into the question as to whether the amount directed by the ordinance to be paid was too large or too small. If the contractor thought it was too small, he could not by any legal proceeding have it increased, and if the present executive thinks it was too much, we have not the power to override the action of the municipal legislature and the mayor and decrease it. The power is not given to the courts to say how much shall be appropriated.

If the present mayor differs with his predecessor in office as to the amount that in conscience ought to be paid for the work done, it appears to us that the answer is:

That an ordinance like this one, once passed by councils and signed by the mayor, if within the power given by the legislature to it, is a final and accomplished act, and must stand till repealed, and the power to repeal does not lie with the court.

It must be remembered, that as to some matters, and this is one, councils and the mayor are specially authorized by the legislature to act. Such legislation as this, as has been said, requires a special course of action.

The ordinary kind of legislation can be passed by a majority vote of councils, and if vetoed by the mayor can be passed over his veto; this kind requires a two-thirds vote, and must be approved by the mayor to be effective. It cannot be passed over his veto.

Neither does the plaintiff recover any interest for the time he is deprived of his warrants, if he finally wins his case.

The legislature of the state has power to legislate upon all subjects not prohibited by the constitution.

The municipal legislature (councils) has only the power to legislate upon the subjects that their charter or some act of assembly authorizes. But when the power is clearly given the courts have no right to set aside their acts.

It is quite true that where there is, by implication or directly, only the power to pass reasonable regulations upon a subject, the courts have authority to pass upon the question of the reasonableness thereof, which is only an illustration of an instance of the court inquiring whether the power exists to do what has been done. But we find no case or principle that would justify us in holding that the Act of 1874, quoted, ever intended that the power there given was to be supervised by the court. If so, such ordinances require not only a two-thirds vote of both branches of councils and the approval of the mayor, but must also be finally approved by the court.

The province of the judicial branch of the government is to construe and administer the laws, not to make them.

That power rests with the representatives of the people, elected by them for that purpose, and the less the courts attempt to infringe on that right the better for all concerned.

The allegation in the return that the ordinances were not passed in good faith is a criticism and conclusion without facts, and cannot be considered a good reason for not doing what is required by the ordinances to be done.

All the other questions involved in this argument have been discussed in the other case, and we do not desire to prolong this opinion by again referring to them.

The demurrers are sustained and the peremptory writ is directed to issue.

*Error assigned* was the judgment of the court.

*Michael J. Ryan,* City Solicitor, for appellant.—The ordinance of November 28, 1911, directing the drawing of the warrants in question is void, because both the original agreement and the supplemental agreements were made (as admitted by the demurrer) in pursuance of a concerted plan between appellee and the director of public safety to cheat and defraud the city of Philadelphia. Contracts which involve the commission of a public wrong are absolutely void and the ratification of such a contract in any form carries with it the taint of the original contract: Seltzer v. Electric Co., 199 Pa. 100.

We next contend that under the following authorities councils had no power to ratify this fraudulent agreement, or to direct payment to be made in pursuance of it: McHugh v. Schuylkill County, 67 Pa. 391; Shisler

474 VARE v. WALTON, Appellant.

v. Vandike, 92 Pa. 447; Lyon v. Phillips, 106 Pa. 57; Henry Christian Building & Loan Assn. v. Walton, 181 Pa. 201.

The ordinance of May 28, 1911, is supported by no obligation, legal or moral, and cannot be sustained as an exercise of any power conferred on councils by the Act of May 23, 1874, Section 5, P. L. 230, 3 Stewart's Purdon's Digest, 2712, Sec. 27: Webster v. Hopewell Boro., 19 Pa. Super. Ct. 549; O'Rourke v. Philadelphia, 211 Pa. 79.

*Francis Shunk Brown,* of *Simpson, Brown & Williams,* for appellee.—The city councils have the power to recognize a moral obligation and to direct the payment of public money in satisfaction of such obligation: Bailey v. Philadelphia, 167 Pa. 569; Smith v. Phila., 17 Pa. D. R. 231; Vare v. Stearns, 21 Pa. D. R. 79; Croasdill v. Phila., 18 Pa. D. R. 719; Justice v. Phila., 37 Pa. Super. Ct. 267; Dunn v. Columbia Nat. Bank, 204 Pa. 53; Lyon v. Phillips, 106 Pa. 57.

The city controller is a mere bookkeeper of the city and has no discretion to refuse to countersign and certify a warrant properly and legally issued: Commonwealth v. Philadelphia, 176 Pa. 588; Com. v. Pittsburgh, 204 Pa. 219; O'Rourke v. Phila., 13 Pa. D. R. 379.

The ordinance of councils of November 28, 1911, relates to a subject matter that councils had authority to act upon, was passed in a legal manner and approved by the mayor, and hence has become the official act of the municipality, which is final and conclusive and binding upon all other branches of the city government: Com. v. City Controller, 21 Pa. D. R. 101.

Per Curiam, May 13, 1912:

The judgment is affirmed for the reasons stated in the opinion of the court by Judge Bregy.