Barry Almy et al., Appellants *v.* The Borough of Wilkinsburg, a municipal corporation, Appellee.

Argued May 9, 1980, before Judges MENCER, BLATT and MACPHAIL, sitting as a panel of three.

*John F. Karns, Karns & Corbett,* for appellants.

*James M. McElfish,* for appellee.

OPINION BY JUDGE MACPHAIL, July 15, 1980:

Barry Almy, John Anderson, Gregory Ferrell, Charles Simler, and Edmund Schott (collectively, Appellants) were all employed as police officers by the Borough of Wilkinsburg (Borough), a municipal corporation. On December 23, 1978, at a special meeting of the Borough's council, the council, by resolution (resolution 6720), reduced the size of the Borough's police force resulting in the furloughing of Appellants from the force effective January 1, 1979.[1] Appellants filed suit in mandamus with the Court of Common Pleas of Allegheny County seeking reinstatement to the Borough's police force with back pay. After a hearing, the Court dismissed Appellants' complaint and they have appealed that order to this Court.

Appellants raise four issues for our consideration:

I. Whether resolution 6720 was legislative and not ministerial in character and, therefore, invalid because it was not advertised or recorded as required by Sections 1006(4) and 1008(a) of The Borough Code (Code), Act of February 1, 1966, P.L. (1965) 1656, *as amended,* 53 P.S. §§46006(4) and 46008(a).

---

[1] One other officer, Lieutenant McKenna, was eligible for retirement and was retired because of the enactment of resolution 6720. McKenna is not a party to this action.

II. Whether resolution 6720 is invalid because the Borough's Mayor was precluded from casting a tie-breaking vote on a motion to rescind the resolution.

III. Whether the resolution was invalid because it was not passed for reasons of economy as required by Section 1190 of the Code, 53 P.S. §46190, but rather was motivated by bad faith on the part of the council.

IV. Whether Appellants were improperly denied a hearing concerning their furloughs before the Borough's Civil Service Commission.

For the reasons which follow, we affirm the trial court's order.

## I. *The Resolution*

In determining whether the resolution resulting in Appellants' furloughs was invalid because it was not publicized in accordance with Section 1006(4) of the Code and was not recorded in the Borough's ordinance book in accordance with Section 1008(a) of the Code, we must first determine whether the resolution was of a "legislative character." Only if it was, would the requirements of Sections 1006(4) and 1008(a) be applicable.

"There is no special virtue in the word 'legislative' merely because it stems from the same root as 'legislature'. It derives its qualifying meaning from the character of the thing done." *Addison Case,* 385 Pa. 48, 57-58, 122 A.2d 272, 276 (1956). "It is the substance of the act of a governing body that is all important, not the form thereof." *Commonwealth ex rel. Fox v. Chace,* 403 Pa. 117, 122, 168 A.2d 569, 572 (1961). Ordinarily, "When a governmental body is exercising a legislative function, it manifests a general purpose and its final result." *Pittsburgh v. Insurance Commissioner,* 4 Pa. Commonwealth Ct. 262, 266, 286 A.2d

475, 477 (1971), *rev'd on other grounds,* 448 Pa. 466, 294 A.2d 892 (1972).

If an ordinance or resolution of a legislative nature is defined in terms of "general" purposes, a resolution of a non-legislative or ministerial nature (which is what the Borough argues resolution 6720 to be) should be defined in terms of "specific" purposes. Our Supreme Court has distinguished between legislative and non-legislative enactments (whether their formal titles be ordinance, resolution, or some other) by regarding the former as being permanent and the latter as temporary or as pertaining to "the transaction of current business [or] the ordinary administration of municipal affairs." *Jones v. Schuylkill Light, Heat and Power Co.,* 202 Pa. 164, 167, 51 A. 762, 762 (1902). *See also Schenck v. Borough of Olyphant,* 181 Pa. 191, 197, 37 A. 258, 259 (1897) and T. Chrostwaites, *Pennsylvania Borough Law,* (1966 ed.) at 38-39, 42-45.

With these distinctions in mind, we turn to the question of whether a borough council's resolution decreasing the size of its police force (and of necessity furloughing several police officers) is legislative or ministerial in nature.

Appellants' first argument in support of their position that the resolution was legislative rests on Sections 1121, 1184, and 1190 of the Code, 53 P.S. §§46121, 46184, and 46190. We disagree that these sections require us to interpret resolution 6720 as being legislative in character.

Section 1121 vests with the borough council, subject to civil service provisions, the power to appoint, remove, suspend, or reduce in rank "one or more suitable persons . . . as borough policemen." The section does not mandate the form which such action must take. Section 1121 also authorizes the Borough to establish a police department and mandates that such action be accomplished *by ordinance.* In *Kusza v.*

*Maximonis,* 363 Pa. 479, 482, 70 A.2d 329, 331 (1950), our Supreme Court reasoned that

> In construing a statute, the court must ascertain and give effect to the legislative intention as expressed in the language of the statute, and cannot, under its powers of construction, supply omissions in a statute, especially where it appears that the matter may have been intentionally omitted: .... (Citations omitted.)

We find the Supreme Court's reasoning to be applicable here. The legislature's requiring that police departments be established by ordinance yet, in the same section of the Code, not providing the form to be followed in appointing or removing police officers to or from a police force indicates the intentional nature of the omission. It is not within our province to add the requirement that the appointment or removal be made by ordinance.

We also note that the authority vested in council by Section 1121 of the Code to appoint, suspend, reduce in rank, or discharge police officers is exclusive. Although the Borough's mayor supervises the performance of the police department, the mayor plays no role in choosing the members of that department. *See Scaccia v. Old Forge Borough,* 373 Pa. 161, 162-63, 94 A.2d 563, 564 (1953); *Commonwealth v. Feglitta,* 29 Luzerne 461, 462 (1934). In general, the mayor may exercise a power of veto over "legislation" passed by Council. T. Chrostwaites, *Pennsylvania Borough Law* at 514. If council's action in passing a resolution which resulted in the furlough of police officers was legislative in character, it would be subject to a mayoral veto. If that were the case, the mayor then would share in the council's authority pursuant to Section 1121. Section 1121 clearly vests such authority solely in the council and not with the mayor. Since the mayor can exercise no authority over the furloughing

of police officers, such a resolution resulting in a furlough is not legislative in character.

Likewise, we cannot agree with Appellants that Sections 1184 and 1190 of the Code require action by ordinance or legislative resolution in a case such as this. Those sections deal with the manner of filling appointments on or removing persons from police forces. Neither requires a legislative enactment in taking the actions authorized. Section 1190 does require that if the number of paid employees of a police force is reduced "for reasons of economy or other reasons" reductions shall occur first by retiring those persons eligible for retirement and then by *furloughing* other employees beginning with the last appointed. That is precisely the procedure which was followed in reducing the number of employees on the police force in this case.

Appellants next argue that the legislature's intent to make legislative all borough council action dealing with the appointment or removal of police officers is evidenced by the "substantial treatment given to this subject" in the Code. Legislative intent is not to be measured by quantity but rather by context. As we discussed earlier, especially in reference to Section 1121 of the Code and *Kusza v. Maximonis,* we think it is clear that the legislature did not intend that the appointment or removal of police officers be accomplished only by ordinance or other "legislative" action. No other section of the Code or judicial opinion to which Appellants refer convinces us otherwise.

Appellants' final arguments on this issue are that the resolution, in effect, amended prior ordinances dealing with the police department and that the reduction of the Borough's police department by seven officers amounted to the abolition of the department. Either amendment or abolition, Appellants argue, may be accomplished only by ordinance.

The flaw in Appellants' argument is that council's action here constituted neither an amendment of a prior ordinance nor the abolition of the Borough's police department. The resolution reducing the number of police officers by seven was enacted for reasons of economy. The Borough budget adopted by the council on December 20, 1978 and intended to become effective January 1, 1979, did not contain sufficient allocations to maintain the then 43 person police force. In order to stay within the budget guidelines, council passed a resolution reducing the number of persons in the department to 36, the number which could be accommodated by the funds allocated in the budget. The resolution represented a special, temporary form of action mandated by the amount of funds available for the police department. The internal structure of the department and the maximum number of officers authorized if funds were to become available, both of which were provided for by prior ordinance, remained unchanged. Indeed, were additional funding to become available for the department and the police force increased nearer to its authorized strength, the first officers required to be placed on duty would be those furloughed because of the resolution. *See* Section 1190 of the Code, 53 P.S. §46190.

In summary, then, the resolution resulting in the furloughing of Appellants from the Borough's police force did not represent legislative action. It was specific action taken in the ordinary administration of municipal affairs. Because the resolution was not legislative in nature, there was no requirement that it be published in accordance with Section 1006(4) of the Code or recorded in the Borough's ordinance book in accordance with Section 1008(a) of the Code. *See also Schenck v. Borough of Olyphant* at 198, 37 A. at 259. The resolution was valid as enacted by the council.

## II. *The Motion to Reconsider*

On January 8, 1979, at council's regular monthly meeting, a motion was introduced to rescind the resolution which had resulted in Appellants' furloughs. The sponsor of the motion was a council member who had opposed the original resolution. The vote on the motion to rescind resulted in a tie vote. The mayor then attempted to cast the tie-breaking vote, but he was ruled out of order. The January 8 meeting was continued until January 15. At the latter meeting, the mayor indicated his intention to vote "yes" in order to break the tie on the motion to reconsider the resolution. Again, the mayor was prevented from so voting. Council members then voted 5 to 3 to uphold the president's ruling that the mayor was out of order in attempting to vote.

Appellants argue that Section 1003 of the Code, 53 P.S. §46003, guarantees the mayor the right to vote on any (and presumably all) actions resulting in a tie vote before the council.[2] The Borough argues, in turn,

---

[2] Section 1003, in pertinent part, reads

In all cases where, by reason of a tie or split vote, the council of any borough shall be unable to enact or pass any ordinance, resolution, or motion, or to declare or fill any vacancy in its membership, or in any other borough office, or to take any action on any matter lawfully brought before it, the mayor, if in attendance at the meeting, may at his option cast the deciding vote, or request that the matter be tabled until a special meeting of council to be held within not less than five days or more than ten days at which time the matter shall be reconsidered by council and, if a tie or split vote still exists, it shall be the duty of the mayor at that time to cast the deciding vote. If such a tie or split vote shall occur at any meeting when the mayor is not in attendance the matter shall be tabled to a special meeting to be held within not less than five days or more than ten days as set by the president of council, and the mayor shall be given at least five days' notice of such meeting, at which meeting it shall be the duty of the mayor to cast the tie-breaking vote.

that Section 1003 of the Code applies only to substantive not to procedural matters, that to allow the mayor to vote in this action would violate the parliamentary rules governing council meetings, that a motion to rescind is not proper where an act is no longer executory, and that the issue became moot when council voted 5 to 3 to uphold the ruling prohibiting the mayor from voting.

We need not now establish general rules under which a mayor may or may not cast a tie-breaking vote because it is clear that such a vote would have been improper here. Had the mayor been allowed to vote on the motion to rescind, he would have accomplished an act which would have been impossible pursuant to the original resolution. As we have noted in part I of this opinion, the authority to appoint, remove, or suspend police officers rests solely with the borough council. Had the original resolution resulted in a tie vote, the mayor could not have voted to break the tie because such a vote would have given him authority over the appointment or removal of police officers, an authority clearly not contemplated by Section 1121 of the Code. *See Commonwealth v. Feglitta* at 462. Likewise, were the mayor to be allowed to cast a tie-breaking vote on a motion to rescind a resolution which had resulted in the furlough of several police officers, the mayor would be exercising authority which he did not possess over the police force. To allow the mayor to vote on the motion to rescind the resolution when he could not have voted on the resolution itself would clearly put form over substance. We decline to do so.

Also, despite the tie vote on the motion to rescind, a majority of the council members voted to uphold the president's decision denying the mayor the opportunity to cast the tie-breaking vote. A majority of council is free to set its own rules of procedure and absent proof to the contrary, such action is presumed to be in

conformity with council's rules. *Commonwealth ex rel. Fox v. Chace* at 120, 168 A.2d at 571.

The fact that the Borough's mayor was not permitted to cast a tie-breaking vote on a motion to rescind resolution 6720 did not invalidate the resolution or the resulting furloughs.

### III. *The Motivation*

It is undisputed that Section 1190 of the Code, 53 P.S. §46190, authorizes boroughs to reduce the number of paid employees on the police force "for reasons of economy or other reasons." Appellants recognize the validity of Section 1190, but argue that the Borough, in enacting resolution 6720, did not act for reasons of economy but rather acted in bad faith. The trial court heard testimony on the issue of council's motivation in enacting the resolution and decided the issue in favor of the Borough. In reviewing this issue, we will consider only whether council has stepped beyond the limits of the law. As long as council acts within the scope of its power and does not violate any law of the Commonwealth, we will affirm the decision of the trial court. Clearly, we will not pass upon the wisdom of the actions taken or the policies set by council. *Appeal from Ordinance No. 384 of the Borough of Dale,* 33 Pa. Commonwealth Ct. 430, 438, 382 A.2d 145, 148 (1978).

Appellants argue that the record does not support the Borough's assertion that Appellants were furloughed for reasons of economy. They assert that "economy" is not mentioned in the minutes of the meeting where resolution 6720 was passed, that the 1979 budget was greater than the 1978 budget, and that some Borough departments received increased budget allocations while that for the police department was being cut. Appellants are correct in stating that nowhere in the minutes of the meeting is it recorded that any Borough council member said "A reduction in the size of the police force will save money for the Bor-

ough.'' The minutes of the December 23, 1978 meeting do, however, reflect a recommendation that the council adopt a mercantile and business privilege tax in order to maintain the police force at its then current strength.[3] The discussion concerning the Borough's having to increase taxes in order to maintain its 43 member police force was sufficient evidence in the minutes to find that the adoption of resolution 6720 was for reasons of economy.

The facts that the 1979 Borough budget exceeded that of 1978 and that some departments received increased allocations do not detract from the fact that the reduction of the size of the police force was based on reasons of economy. As the late Judge Kramer wrote for this Court in *Genes v. City of Duquesne*, 27 Pa. Commonwealth Ct. 620, 623, 367 A.2d 327, 329 (1976), '' 'Reasons of economy' would include, in our judgment, a saving of money by the removal of unneeded employees, *regardless of the financial condition of the City.''* (Emphasis added.) *See also Gruver v. Howell,* 28 Pa. Commonwealth Ct. 296, 300, 368 A.2d 920, 922 (1977).

The fact that the resolution was based on reasons of economy was also supported by testimony given at the hearing in this matter by James Robert Huff, Manager and Secretary of the Borough, and George Hoffman, a member of the Borough council. It is true that some of Huff's and Hoffman's testimony was disputed by Appellants' witnesses and on cross-examination. Matters of credibility, however, rest with the trial judge. *Mamallis v. Millbourne Borough,* 401 Pa. 375, 380, 164 A.2d 209, 211-12 (1960). Here, the judge chose to believe and give more weight to the Borough's witnesses than to Appellants' witnesses. We cannot disturb that decision and we find that the trial court's

---

[3] Council did not act upon the recommendation.

conclusion that resolution 6720 was enacted for reasons of economy was based upon substantial evidence.

Appellants also argue that the council acted in bad faith in passing the resolution. Specifically, they allege that one council member bore hard feelings against the police department because one of the furloughed officers had arrested her son and because another officer had had a verbal altercation with her. Furthermore, they allege that the entire council bore ill will toward the police department because of a recent arbitration award won by the department. Finally, Appellants argue that council's bad faith is evidenced by its making the resolution effective January 1, 1979 when, had they waited until after January 5, 1979, two other officers would have been eligible for retirement, thus decreasing the number to be furloughed by two.[4]

Municipal officials are presumed to have properly performed their duties and to have taken all steps necessary to give validity to their official acts. *Miners Savings Bank of Pittston v. Duryea Borough,* 331 Pa. 458, 463, 200 A. 846, 848 (1938). In a case such as this, the one alleging bad faith on the part of the borough officials bears the burden of producing evidence of that bad faith sufficient to rebut the presumption that the officials acted with regularity. *Kraftician v. Borough of Carnegie,* 35 Pa. Commonwealth Ct. 470, 473, 386 A.2d 1064, 1066 (1978). *See also Gruver v. Howell* at 301, 368 A.2d at 922. The trial court found and we agree that Appellants failed to carry their burden. We also note that the resolution went into effect on January 1, 1979 and not at a later date because it was enacted in reference to the Borough budget, which also became effective on January 1.

---

[4] One of the officers due to retire on January 5, 1979, passed away on December 31, 1978. The number of officers to be furloughed on January 1, 1979, therefore, was decreased by one.

The record discloses no ulterior or unlawful motive on council's part in enacting resolution 6720 and we do not find the resolution to be invalid.

## IV. *The Furlough*

Appellants' final argument is that they were denied a hearing before the Wilkinsburg Civil Service Commission prior to being relieved of their duties as borough police officers. Section 1191 of the Code, 53 P.S. §46191, clearly grants a right to a civil service hearing to any police officer who is "suspended, removed or reduced in rank" and who demands such a hearing. A hearing is not required, however, where police officers are furloughed because the size of the police department is decreased for reasons of economy. *Kusza v. Maximonis* at 482-83, 70 A.2d at 331.

Appellants argue that they were not furloughed but rather that they were dismissed for "political reasons." The political reasons they cite are the same grounds they argued as evidencing council's "bad faith" in enacting resolution 6720. We have already held that their allegations and their evidence did not support a finding of bad faith. We now hold that they also do not support their assertion of a firing for political reasons. Appellants were not suspended, removed, or reduced in rank. They were furloughed. They were not entitled to a civil service commission hearing.

## V. *Conclusion*

The order of the Court of Common Pleas is affirmed.

### ORDER

AND Now, this 15th day of July, 1980, the Order of the Court of Common Pleas of Allegheny County at No. G.D. 79-2344, in mandamus, dated July 30, 1979, is affirmed.