639 A.2d 1296

**COMMONWEALTH of Pennsylvania**

v.

**Mary CREIGHTON, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Nov. 18, 1993.

Decided March 30, 1994.

John R. Kardos, Jr., for appellant.

Gerard J. Serzega, for appellee.

Before PELLEGRINI and FRIEDMAN, JJ., and SILVESTRI, Senior Judge.

FRIEDMAN, Judge.

Mary Creighton (Creighton) appeals from an order of the Court of Common Pleas of Allegheny County which dismissed her appeal from a summary conviction for violating Borough of Carnegie (Borough) Ordinance No. 1089 (ordinance).

On April 13, 1992, the Borough enacted the ordinance, thereby limiting the number of cats and/or dogs which a person could keep within the Borough to a total of five. Violators of the ordinance were subject to fines as well as to forfeiture of any animals over the number of five.[1]  On March

---

1. The ordinance provides, in pertinent part:

18, 1992, the Borough published a notice of the proposed ordinance in the Signal Item, a weekly newspaper in general circulation. The Borough also published a "Notice of Enactment" of the new ordinance in the Signal Item on April 22, 1992.

Prior to enactment of the ordinance, Creighton had acquired a large number of cats, at various times ranging in number from the high teens to as many as 33.[2] On April 28, 1992, the Borough's building inspector visited Creighton's residence and advised her of the ordinance. At the time of the building inspector's first visit, Creighton had approximately 25 cats; when he returned on May 29 to check on compliance, she had approximately the same number of cats. At that time, he cited Creighton for violation of the ordinance.

WHEREAS, pursuant to the provisions of the Borough Code Section 1202(5)(6)(74) and in the interest of preserving the health, safety and welfare of the residents of the Borough of Carnegie, Borough Council desires to limit the number of dogs and cats kept by any one person and/or residence.

NOW, THEREFORE, BE IT ORDAINED AND ENACTED by the Council of the Borough of Carnegie and it is hereby ordained and enacted by the authority of the same as follows:

SECTION 1. No person or residence shall be permitted to own, harbor or maintain more than five (5) dogs or cats, or any combination thereof, within the Borough limits. This section shall not include litters of young which have not yet been weaned or young which have been weaned for less than six (6) weeks. Neither shall this Section apply to animals owned or harbored by registered breeders. This Section shall not affect any person or residence that has been granted an exemption permit by the Borough of Carnegie Code Enforcement Officer. This permit shall be granted at the sole discretion of the Code Enforcement Officer to those persons or residences that provide temporary foster care and do placement work. There shall be no fee for the exemption permit. However, at no time shall the number of dogs, cats, or combination thereof exceed ten (10) being owned, harbored or maintained by the person or residence granted an exemption permit.

\*      \*      \*      \*      \*      \*

SECTION 3. Any person violating the provisions of this Ordinance shall be fined up to One Hundred ($100.00) Dollars plus costs for a first offense and up to Three Hundred Fifty ($350.50) [sic] Dollars for all subsequent offenses. Any violators of the provisions of this Ordinance are also subject to forfeiture of all animals over the five (5) pet limit.

2. Creighton testified that many of the cats were strays which had been used as mousers at area plants which had shut down and that the cats had received their rabies shots and were in good health. R.R. at 35a.

The District Justice found Creighton guilty of violating the ordinance. She appealed to the Allegheny County Court of Common Pleas where the trial judge also found her guilty. Creighton now appeals to this court.

On appeal,[3] Creighton argues (1) that the ordinance is void for failure to comply with provisions of the state statute, 53 P.S. § 46006, concerning publication and enactment of ordinances; (2) that the ordinance is not a proper exercise of the authority granted by sections 1202(5), (6) & (74) of the Borough Code (Borough Code), Act of February 1, 1966, P.L. (1965) 1656, *as amended,* 53 P.S. §§ 46202(5), (6) & (74); (3) that application of the ordinance to persons who kept large numbers of cats prior to the passage of the ordinance violated Article 1, Section 10 of the U.S. Constitution or Article 1, Section 17 of the Pennsylvania Constitution as an ex post facto law or an impairment of contracts and confiscates her pets without due process of law or just compensation; and (4) that her conviction should be vacated because the trial court entered sentence on the docket book on the day it adjudged her guilty in open court, prior to both the expiration of the time for post trial motions and to the court's hearing of the post trial motions which it later denied.

With regard to the first issue, Creighton alleges that the newspaper notice violated the procedural requirements for publication in that the brief summary failed to set forth all of the provisions of the ordinance in reasonable detail and that the Borough failed to supply a copy of the full text of the ordinance to the newspaper at the time of publication. This allegation must fail because section 5571(c)(5) of the Judiciary Code, 42 Pa.C.S.A. § 5571(c)(5) establishes the time period within which to challenge defects in the process of enacting an ordinance. That section provides:

3. Our scope of review of a trial court's determination on an appeal from a summary conviction is whether there has been an error of law or whether the findings of the trial court are supported by competent evidence. *Commonwealth v. Harchelroad,* 154 Pa.Commonwealth Ct. 259, 623 A.2d 878, *appeal denied,* 535 Pa. 649, 633 A.2d 153 (1993).

Questions relating to an alleged defect in the process of enactment or adoption of any ordinance, resolution, map or similar action of a political subdivision shall be raised by appeal commenced within 30 days after the effective date of the ordinance, resolution, map or similar action.[4]

Creighton did not question the enactment of the legislation until after she was cited, which was more than 30 days after the ordinance was enacted. Thus, she cannot now challenge the process of enactment.

■ As to Creighton's second argument, we look to the power of the Borough to enact legislation regulating the keeping of animals. A Borough has only those powers specifically delegated to it by the legislature. *See, e.g., Commonwealth v. Hanzlik,* 400 Pa. 134, 161 A.2d 340 (1960). The ordinance at issue here was purportedly enacted pursuant to authority granted by section 1202 of the Borough Code which authorizes boroughs to enact ordinances:

(5) [t]o prohibit and remove any nuisance, including but not limited to accumulations of garbage and rubbish and the storage of abandoned or junked automobiles and to prohibit and remove any dangerous structure on public or private grounds, or to require the removal of any such nuisance or dangerous structure by the owner or occupier of such grounds. . . .

(6) [t]o make such regulations as may be necessary for the health, safety, morals, general welfare and cleanliness and the beauty, convenience, comfort and safety of the borough.

(74) [t]o make and adopt all such ordinances, bylaws, rules and regulations not inconsistent with or restrained by the Constitution and laws of this Commonwealth, as may be expedient or necessary for the proper management, care and control of the borough and its finances, and the mainte-

4. We applied this ordinance in *Health Group Care Centers, Inc. v. Pittsburgh,* 122 Pa.Commonwealth Ct. 384, 552 A.2d 323 (1988), *appeal denied,* 523 Pa. 644, 565 A.2d 1168 (1989). Neither in that case nor here, has anyone questioned the meaning of the statutory language requiring an "appeal" from the enactment or adoption of an ordinance before there has been any adjudication on the ordinance.

nance of peace, good government, safety and welfare of the borough and its trade, commerce and manufactures.

Sections 1202(5), (6) & (74) of the Borough Code, 53 P.S. §§ 46202(5), (6) & (74).

The Borough contends that there was sufficient evidence of a nuisance and of risk to the public health to authorize its exercise of the police power in this instance. Although we have found no Pennsylvania cases analyzing municipal legislation which limited the number of cats and dogs pursuant to the cited enabling provisions, we believe that other cases dealing with municipal authority to regulate nuisances are pertinent. As both parties point out, we are concerned here with living animals, rather than with the inert junk involved in most nuisance cases; however, for our purposes here, the critical consideration of whether the regulated activity constitutes a nuisance or is otherwise contrary to the public health, safety or general welfare is as pertinent to living animals as it is to junk materials.

With regard to legislation enacted pursuant to the municipality's authority to regulate nuisances, we have held that

a municipal ordinance which seeks to abate the storage of wrecked, junked, or abandoned vehicles *cannot declare the mere presence* of such vehicles *on any given piece of property to be a nuisance per se.* ... *Rather, the ordinance must be phrased in such a way as to require the municipality to affirmatively establish that a nuisance in fact existed.*

*Talley v. Borough of Trainer,* 38 Pa.Commonwealth Ct. 441, 442–43, 394 A.2d 645, 646 (1978) (emphasis added). In *Talley,* the evidence, in the record, including supplemental photographic evidence, provided sufficient evidence for the Borough to establish a nuisance in fact. Similarly, in *Commonwealth v. Sadecky,* 41 Pa.Commonwealth Ct. 86, 398 A.2d 1073 (1979) (*Sadecky II* ), we upheld the constitutionality of a junk yard ordinance, enacted pursuant to section 1202(29) of the Borough Code, 53 P.S. §§ 46202(29) which specifically gives boroughs the authority to prohibit junk yards. Although dealing

with junk rather than cats, our reasoning in *Sadecky II* is pertinent here. There, we noted that Sadecky did in fact keep the prohibited junk, bringing him within the purview of the ordinance. We then looked to the ordinance itself which, in its preamble, stated that junk vehicles create a nuisance and a hazard and danger to the health and welfare of the Borough's citizens because they are a breeding ground for rodents and an attractive nuisance for children not aware of the dangers involved. In addition, we noted that the Borough's testimony before the trial court showed that rodents did infest the lot where the junked vehicles were stored and that children had been observed playing on the lot. Based upon prior case law, we stated that "[a] haven for rodents is a nuisance in fact" and concluded that the Borough had sustained its burden of proving that Sadecky's activities constituted such a nuisance. *Id.* at 89–90, 398 A.2d at 1075.

Analogizing from *Talley* and *Sadecky II*, ordinances regulating nuisances must be phrased in such a way as to require the municipality to affirmatively establish that a nuisance in fact exists. Here, the ordinance limits the number of cats or dogs which a person can "own, harbor or maintain" in the Borough to no more than five, but does not indicate why more than five cats or dogs might constitute a nuisance or a risk to the public health and safety. Furthermore, the only evidence that Creighton's cats did create a nuisance is contained in the testimony of Borough's building inspector:

Q. Will you state for the record the existing odors that you found there?

A. Excessive odors were present on the premises. As Mrs. Creighton indicated to me, the cats were not permitted outdoors. These cats were kept in the confinement of the home at all times.

Q. Were the odors to such an extent that the neighbors were complaining of the odors?

A. We have had complaints from the neighbors relative to the odors that eminated [sic] from the property.

[Creighton's attorney objected to the introduction of any letters from neighbors complaining of odors as hearsay.] R.R. at 32a–33a. This evidence falls far short of the evidence of a nuisance in fact presented in *Talley* and *Sadecky II*. Thus, the ordinance reaches beyond the power granted by section 1202(5) of the Borough Code.[5]

However, our inquiry is not ended. The purported justification for this ordinance is found not only in the enabling provision authorizing the municipality to regulate nuisances, but also in sections 1202(6) and 1202(74) of the Borough Code which vest the Borough with broad powers to enact regulations to protect the public interest. We now address the question of whether the ordinance is valid under these sections.

■■■ Subject to its enabling legislation and pursuant to its police power, a governing body has the authority to enact laws which it perceives necessary to protect the public health, safety and general welfare. *De Paul v. Kauffman*, 441 Pa. 386, 272 A.2d 500 (1971). In reviewing a law enacted pursuant to a municipality's police power, a court must determine that the goal sought to be achieved is legitimate and that the means used to achieve that goal are reasonably necessary and not unduly oppressive. *National Wood Preservers, Inc. v. Commonwealth, Dept. of Environmental Resources*, 489 Pa. 221, 414 A.2d 37, *appeal dismissed*, 449 U.S. 803, 101 S.Ct. 47, 48, 66 L.Ed.2d 7 (1980).[6]

5. When the Legislature perceives a problem, as it has with pet animals running at large, it has granted boroughs fairly specific powers to deal with that problem. Section 1202(13) of the Borough Code grants Boroughs the authority "[t]o destroy dogs found at large contrary to laws of the Commonwealth; to prohibit or regulate, by ordinance, the running at large of dogs, cats and/or other pets, and, in the enforcement of such regulations, to direct the killing of dogs, cats and/or other pets, or their seizure and detention, prescribing reasonable charges for their seizure and detention, and to provide for their sale for the benefit of the borough, in default of the redemption thereof by their owners." 53 P.S. § 46202(13).

6. In an extensive discussion of the police power in *National Wood Preservers, Inc. v. Commonwealth, Dept. of Environmental Resources*, 489 Pa. 221, 414 A.2d 37, *appeal dismissed*, 449 U.S. 803, 101 S.Ct. 47, 48, 66 L.Ed.2d 7 (1980), the Court drew from several landmark cases of

■ In this case, the preamble to the ordinance states that pursuant to the Borough Code and "in the interest of preserving the public health, safety and general welfare of the residents ... [the Borough] desires to limit the number of dogs and cats kept by any one person and/or residence," but does not state what legitimate public health, safety and welfare goals the Borough sought to advance by enacting this ordinance. In *Teal v. Township of Haverford*, 134 Pa.Commonwealth Ct. 157, 578 A.2d 80 (1990), *appeal denied*, 527 Pa. 659, 593 A.2d 429 (1991), we stated that an ordinance which declared the storage of disabled vehicles to be unlawful as a nuisance per se would not only be beyond the scope of the authority granted by the enabling statute but would also be unconstitutionally unreasonable. Quoting from other Pennsylvania cases, we said

"What is not an infringement upon public safety and is not a nuisance cannot be made one by legislative fiat and then prohibited." [*Kadash v. City of Williamsport*, 19 Pa.Commonwealth Ct. 643, 650, 340 A.2d 617, 621 (1975).] Further, "even legitimate legislative goals cannot be pursued by means which stifle fundamental personal liberty when the

both the Pennsylvania and United States Supreme Courts. With citations omitted, we quote from that case:

The "police power" is one of the "most essential powers of government...." It has been variously defined as the power "to promote the public health, morals or safety and the general well-being of the community," or as "the inherent power of a body politic to enact and enforce laws for the promotion of the general welfare, or as a power extending to "all the great public needs". The police power is fundamental because it enables "civil society" to respond in an appropriate and effective fashion to changing political, economic, and social circumstances, and thus to maintain its vitality and order. "The police power of the state [must therefore be] ... as comprehensive as the demands of society require under the circumstances." Of necessity, then, the police power is a broad and flexible power. Indeed, it is the state's least limitable power.

*Id.* at 231–32, 414 A.2d at 42–43 (citations omitted).

Police power enactments benefit from the presumption that the legislature acts within the limits of the law. Therefore, the party challenging the constitutionality of a police power measure must establish that it is arbitrary, unreasonable and unrelated to the public health, safety, morals or general welfare. *Boundary Drive Associates v. Shrewsbury Township Board of Supervisors*, 507 Pa. 481, 489–490, 491 A.2d 86, 90 (1985).

goals can be otherwise more reasonably achieved." *Commonwealth v. Sterlace*, 24 Pa.Commonwealth Ct. 62, 66, 354 A.2d 27, 29 (1976).

*Teal*, 134 Pa.Commonwealth Ct. at 162, 578 A.2d at 82.[7]

In essence, Creighton is arguing that the ordinance goes beyond the scope of authority granted by the Borough Code and that it is unconstitutionally unreasonable. Creighton contends that the ordinance improperly sets arbitrary limits on the number of pets a person can own and creates a presumption of health or safety risk based solely on the number of pets owned. The Borough, in response, relies on *Feeley v. Borough of Ridley Park*, 121 Pa.Commonwealth Ct. 564, 551 A.2d 373 (1988) in which we affirmed a trial court order limiting the number of cats in Feeley's house *based upon a declaration that her house constituted a public nuisance. Feeley* is not on point. Unlike the situation here, Feeley was not charged with violation of an ordinance limiting the number of cats she could keep. Rather, there, the Borough brought an action in equity contending that the conditions in Feeley's home constituted a nuisance. In support of its contention, the Borough produced evidence of insufficient and uncleaned litter boxes, of litter, feces and urine on the floors of the house and of flies and a strong ammonia odor in every room, convincing the Chancellor that the house should be declared a public nuisance. The Chancellor issued an order limiting the number of cats Feeley could keep at any one time. Rather than support the Borough's position, *Feeley* illustrates an alternative approach in situations where the number of animals in a residence are thought to create a

7. The First Class Township Code pursuant to which the Haverford ordinance was enacted contains sections practically identical to sections 1202(6) and 1202(74) of the Borough Code. Section 1502 of The First Class Township Code, Act of June 24, 1931, P.L. 1206, *as amended*, 53 P.S. §§ 56544 and 56552. However, these sections do not appear to have been considered in *Teal* which refers specifically to the enabling provision of The First Class Township Code granting authority to regulate nuisances. This section, found at 53 P.S. § 56526, is comparable, but not identical, to section 1202(5) of the Borough Code, 53 P.S. § 46202(5).

nuisance and, like *Talley* and *Sadecky II*, demonstrates the type of evidence required to prove a nuisance.

Here, the trial court focused solely on the question of whether the ordinance's *enactment* complied with governing law; it did not address the legitimacy of either the goals sought to be achieved or the means used to achieve those goals. From the information before us, we simply cannot say whether the Borough ordinance here is a reasonable means to effectuate a legitimate governmental goal. This case presents a similar problem to that confronted in *Borough of Tarentum v. Sadecky*, 16 Pa.Commonwealth Ct. 163, 329 A.2d 328 (1974) (*Sadecky I* ), the predecessor to *Sadecky II*, and we reach a similar result.[8] We will remand to the trial court to make findings and, if necessary, hold additional hearings to determine the goals which this ordinance seeks to advance, whether those goals are legitimate governmental goals and whether, if the goals are legitimate, the means used to achieve them are reasonable.[9]

Accordingly, we vacate and remand for a decision not inconsistent with this opinion.

## ORDER

AND NOW, this 30th day of March, 1994, the order of the Court of Common Pleas of Allegheny County, dated January 26, 1993, is vacated and this case is remanded for findings of fact and conclusions of law and, if necessary, for the taking of additional testimony and for a decision consistent with this opinion.

Jurisdiction relinquished.

PELLEGRINI, J., concurs in result only.

8. In *Sadecky I*, we were unable to determine whether an ordinance "making it unlawful for any person to accumulate junked, abandoned or discarded vehicles, trailers, boats, appliances or household furnishings on private or public property" was invalid. In that case, we reversed and awarded a "venire facias de novo."

9. Because of our decision on this second issue, we do not reach the remaining issues.