The THROOP BOROUGH COUNCIL

v.

The THROOP PROPERTY OWNERS ASSOCIATION, Appellant.

Commonwealth Court of Pennsylvania.

Argued Oct. 8, 1997.

Decided Feb. 26, 1998.

Edward S. Neyhart, Scranton, for appellant.

Joseph G. Price, Scranton, for appellee.

Before COLINS, President Judge, and DOYLE, McGINLEY, SMITH, FRIEDMAN and FLAHERTY, JJ.

DOYLE, Judge.

The Throop Property Owners Association (the Association) appeals from the June 25, 1996 order of the Court of Common Pleas of Lackawanna County which denied its cross-motion for summary judgment and granted summary judgment in favor of the Throop Borough Council (Borough Council). We reverse.

On July 17, 1989, the Borough of Throop, through Borough Council, the Association, and Keystone Landfill, Inc. (Keystone) reached a settlement agreement (three-party contract) concerning litigation pending before the Environmental Hearing Board (EHB) and the trial court.[1] Upon execution of this three-party contract, the Borough and the Association agreed to immediately withdraw the pending litigation before the EHB, with prejudice. In addition, the Borough agreed to immediately discontinue and withdraw its action pending before the Common Pleas Court, with prejudice.

Simultaneously, on July 17, 1989, the Borough, through Borough Council, and the Association entered into a second agreement (two-party contract), which created the Throop Environmental Trust Fund (the Fund). The two-party contract referred to legal claims filed by the Association and Borough with the EHB and the Common Pleas Court relating to the Keystone Sanitary Landfill. The Borough and the Association agreed to withdraw those actions simultaneously in return for present, as well as future, measures on the part of Keystone as described in the two-party contract, including the ongoing payment of "supplemental fees." These supplemental fees were to be paid by Keystone as consideration for the relinquishment of the claims before the EHB by the Association and certain of its members individually against Keystone, and would consist of payments into the Fund in the amount of one dollar per ton beyond that required by law for waste deposited at the Keystone Sanitary Landfill. The two-party contract further provided that these supplemental fees

were to be used to establish the Fund and that the Fund would be governed by a board of four trustees, two of whom would be appointed by the Association and two of whom would be appointed by Borough Council.

After approximately four years, at a Borough Council meeting held on May 24, 1993, Borough Council and the Association amended the two-party contract, whereby Borough Council relinquished its right to appoint trustees to oversee the fund. Approximately two weeks prior to this meeting, the primary election for 1993 was held. In this election, the political parties nominated candidates for the municipal general election including members of the Borough Council. Borough Council member Sharon Soltis–Sparano (Soltis–Sparano), who participated in and voted at the subsequent May 24, 1993 Borough Council meeting, had been unsuccessful in her bid for nomination as a candidate for Borough Council in the 1993 primary.

On April 13, 1994, by which time the new members of the Borough Council had assumed their positions, the newly comprised Borough Council filed with the Common Pleas Court a complaint in equity requesting declaratory and injunctive relief seeking to set aside the amendment to the 1989 two-party contract effectuated by the passage of the motion during the Borough Council meeting held on May 24, 1993.

At the close of the pleadings, Borough Council filed a motion for summary judgment. In its motion, the Borough Council argued that the 1993 amendment was void as an *ultra vires* act by the former Borough Council. The premise of this argument was that the governmental actions of a majority of the 1993 Borough Council illegally bound the successor council to the 1993 amendment. In addition, Borough Council argued that the 1993 amendment was void for reasons of public policy. Specifically, the Borough asserted that an interested party, council member Soltis–Sparano, cast the decisive fourth vote required to approve the 1993 amend-

---

1. The three-party contract provided for the operation of a landfill in Throop, Pennsylvania, in accordance with the terms and provisions of the Pennsylvania Solid Waste Management Act, Act of July 7, 1980, P.L. 380, *as amended*, 35 P.S. §§ 6018.101–.1003, and related state and federal statutes.

ment; the vote was four to three to pass the amendment.

As a result of the Borough's relinquishment of its right to appoint two of the trustees responsible for overseeing the Fund, the Borough argued that exclusive control over the Fund was released to the Association and its president. The Association's president was Fred Soltis, the father of Soltis–Sparano.

The Borough further alleged that, at the time of the vote on the 1993 amendment, Soltis–Sparano was aware that her father would later authorize the use of the money from the Fund to contest the election in which Soltis–Sparano was defeated in her attempt for re-nomination to the Borough Council. Thus, the Borough contended that, during the May 24, 1993 borough council meeting, at which council members voted on the 1993 amendment, because Soltis–Sparano failed to disclose her conflict of interest as required by Section 3(j) of the Public Officials Ethics Act (Ethics Act),[2] the vote was void.

In its cross-motion for summary judgment, the Association requested that the trial court grant it exclusive use of monies currently deposited in the Fund, which, according to the pleadings, amounted to approximately $500,000.00. The Association further requested that all monies paid as a result of the supplemental fee imposed by the two-party contract be deposited in a constructive trust pending litigation.

By order of June 25, 1996, the Common Pleas Court granted in part and denied in part the Borough's motion for summary judgment and denied the Association's cross-motion for summary judgment. The Borough's motion was denied insofar as it alleged that the 1993 amendment constituted an *ultra vires* act. The Common Pleas Court reasoned that the adoption of the amendment was a proprietary rather than a governmental act; therefore, the members of the 1993 Borough Council had the authority to bind their successors to the amendment. The trial court, nevertheless, granted summary judgment in favor of the Borough, concluding that the adoption of the 1993 amendment was void as violative of public policy, generally, and violative of the Ethics Act, specifically.

The trial court denied the Association's cross-motion for summary judgment, which set forth the Association's requests for exclusive control of the Fund and the imposition of a constructive trust pending litigation. The Common Pleas Court reasoned that the two-party contract was being executed as planned and that, if the two Borough Council trustees refused to approve any expenditures proposed by the Association president, there would be no majority vote and the monies would be frozen, resulting in an impasse. The trial court believed that it would be preferable to allow the parties to attempt to resolve the potential impasse issue themselves.

The Association subsequently appealed the trial court's decision to this Court.

**2.** Act of October 4, 1978, P.L. 883, *as amended*, 65 P.S. § 403(j). Section 3(j) provides, in pertinent part, as follows:

Where voting conflicts are not otherwise addressed by the Constitution of Pennsylvania or by any law, rule, regulation, order or ordinance, the following procedure shall be employed. Any public official or public employee who in the discharge of his official duties would be required to vote on a matter that would result in a conflict of interest shall abstain from voting and, prior to the vote being taken, publicly announce and disclose the nature of his interest as a public record in a written memorandum filed with the person responsible for recording the minutes of the meeting at which the vote is taken, provided that whenever a governing body would be unable to take any action on a matter before it because the number of members of the body required to abstain from voting under the provisions of this section makes the majority or other legally required vote of approval unattainable, then such members shall be permitted to vote if disclosures are made as otherwise provided herein.

65 P.S. § 403(j).

Section 2 of the Ethics Act defines a "conflict of interest" as:

Use by a public official or public employee of the authority of his office or employment or any confidential information received through his holding public office or employment for the private pecuniary benefit of himself, a member of his immediate family or a business with which he or a member of his immediate family is associated.

65 P.S. § 402.

■ In an appeal from an order granting summary judgment, our standard of review is limited to a determination as to whether the trial court committed an error of law or an abuse of discretion. *McRae v. School District of Philadelphia,* 660 A.2d 209 (Pa. Cmwlth.1995), *petition for allowance of appeal denied,* 544 Pa. 639, 675 A.2d 1254 (1996).

A court may grant a motion for summary judgment only where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Pa. R.C.P. No. 1035(b); *Marks v. Tasman,* 527 Pa. 132, 589 A.2d 205 (1991). When considering a motion for summary judgment, a court must consider the evidence in the light most favorable to the non-moving party, accepting all of its well-pleaded facts as true and construing all reasonable inferences in its favor. *Morning Call, Inc. v. Board of Directors of Southern Lehigh School District,* 164 Pa.Cmwlth. 263, 642 A.2d 619, *petition for allowance of appeal denied,* 539 Pa. 698, 653 A.2d 1235 (1994).

The Association argues that it was improper for the trial court to consider the legality of the "ordinance" approving the 1993 amendment because the Borough filed its complaint more than thirty days after the 1993 amendment was approved. The Association bases this argument on the original language of Section 1010 of the Borough Code, as it was enacted in 1966, which governs appeals from ordinances.[3] We initially note that Section 1010 was amended by the Judiciary Act Repealer Act (JARA)[4] effective June 27, 1978. This amendment eliminated the thirty day limitation period for challenging borough ordinances from section 1010 of the Borough Code but put the same limitation in the Judicial Code. Section 1010 presently reads, in its entirety, as follows:

> Complaints as to the legality of any ordinance or resolution may be made to the court. In cases of ordinances laying out streets over private lands, the court shall have jurisdiction to review the propriety as well as the legality of the ordinance.

53 P.S. § 46010.

The Judiciary Act of 1976, Act of July 9, 1976, P.L. 586, added the thirty day requirement to Section 5571 of the Judicial Code as follows:

> § 5571. Appeals generally
>
> . . . .
>
> (c) Exceptions.—
>
> . . . .
>
> (5) *Ordinances, resolutions, maps, etc.*—Questions relating to an alleged defect in the process of enactment or adoption of any ordinance, resolution, map or similar action of a political subdivision shall be raised by appeal commenced within 30 days after the effective date of the ordinance, resolution, map or similar action.

42 Pa.C.S. § 5571.

■ Therefore, the Judicial Code and not the Borough Code governs the applicable time period in which appeals challenging the legality of ordinances or resolutions of a political subdivision, such as Borough Council in this case, may be taken. We also recognize that the language of Section 5571 of the Judicial Code would govern the appeal from a motion as a "resolution ... or similar action of a political subdivision."[5] *See Com-*

---

3. Act of February 1, 1966, P.L. (1965) 1656, *as amended,* 53 P.S. § 46010. Upon its enactment in 1966 and prior to JARA in 1978, Section 1010 provided as follows:

 Complaint as to the legality of any ordinance or resolution may be made to the court of quarter sessions, upon entering into recognizance with sufficient security to prosecute the same with effect and for the payment of costs, by any person aggrieved, within thirty days after the enactment of any ordinance or the adoption of any resolution, and the determina-

tion and order of the court thereon shall be conclusive.

4. Section 2(a)[1399] of JARA, Act of April 28, 1978, P.L. 202, 42 P.S. § 20002(a)[1399].

5. As noted by the Borough, the minutes of the May 24, 1993 meeting indicates that the 1993 Borough Council approved the 1993 amendment by a "motion":

*monwealth ex rel. Tarner v. Bitner,* 294 Pa. 549, 555, 144 A. 733, 735 (1929) (stating that "a resolution ... is not a law and there is no difference between a resolution and a motion[;] the substance and not the form of the corporative act is what governs"); *see also Commonwealth ex rel. Fox v. Chace,* 403 Pa. 117, 122, 168 A.2d 569, 572 (1961) (stating that "the fact the action was termed a 'motion' instead of a 'resolution' was held to be immaterial").

■ As a general rule, the timeliness of an appeal, whether to an appellate court or common pleas court, is a jurisdictional question, and an extension of a statutory appeal period cannot be granted as a matter of grace or mere indulgence. *Tarlo v. University of Pittsburgh,* 66 Pa.Cmwlth. 149, 443 A.2d 879 (1982). As we stated in *Olson v. Borough of Homestead,* 66 Pa.Cmwlth. 120, 443 A.2d 875 (1982):

It is well settled in our law that, where the legislature has fixed a time period within which an appeal may be filed, that period is mandatory and may not be extended as a matter of grace or indulgence.... The timeliness of an appeal, and compliance with the statutory provisions that grant the right of appeal, go to the jurisdiction of the court to hear and decide the appeal.

*Id.* 443 A.2d at 878 (citations omitted).

Additionally, in *Health Group Care Centers, Inc. v. City of Pittsburgh,* 122 Pa. Cmwlth. 384, 552 A.2d 323 (1988), *petition for allowance of appeal denied,* 523 Pa. 644, 565 A.2d 1168 (1989), this Court held that Section 5571 of the Judicial Code precluded the ap-

pellant's challenge to a realty transfer tax ordinance brought more than thirty days after the effective date of that ordinance. In so holding, we stated as follows:

As the city correctly points out, [Section 5571 of the Judicial Code] prevents appellant's challenge of the ordinances based on improper notice or defective subject in the ordinance since these arguments were raised several years after the effective date of the ordinances and relate to the process of enactment.

*Id.* 552 A.2d at 325; *see also Norwegian Township v. Borough of Minersville,* 5 Pa. Cmwlth. 296, 290 A.2d 273 (1972).

Similarly, in *Commonwealth v. Creighton,* 163 Pa.Cmwlth. 68, 639 A.2d 1296 (1994), we held that, pursuant to Section 5571(c)(5) of the Judicial Code, a cat owner, who had been convicted for violating an ordinance limiting the number of cats which a person could keep within the borough, could not challenge the process of enactment of that ordinance where she had not challenged the ordinance until after she had been cited for the violation, which was more than thirty days after the ordinance was enacted.

■ In this case, as noted above, Borough Council resolved to relinquish control over the appointment of trustees to the Fund by a motion made and carried on May 24, 1993. The Borough did not file its appeal from that action, in the form of a complaint in equity seeking injunctive and declaratory relief, until April 13, 1994, which is approximately eleven months after the challenged amendment had been adopted by Borough Council.[6]

---

**Motion By Michaels Seconded By Nelson**
Severing the ties between the Throop Borough Council and the Throop Property Owners on the Environmental Trust Fund. This Agreement to terminate immediately upon execution of this Agreement. The Borough [is] released from and no longer bound by the terms of this Agreement.
Hereby, the Borough of Throop and the Throop Property Owners Assoc[iation] agree that this Agreement is terminated.
**Against Tomchak Lahotski Bingham**
**Three (3) Against Four (4) In Favor Motion Carried**
(Minutes of May 24, 1993 Borough Council Meeting.)

6. As noted above, prior to JARA, the Borough Code provided that "Complaint as to the legality

of any ordinance or resolution ... may be made ... by any person aggrieved, within thirty days after the enactment of any ordinance or the adoption of any resolution." The current version of Section 5571 of the Judicial Code, which now contains that same time limitation, provides that "Questions relating to. an alleged defect in the process of enactment or adoption of any ... resolution or similar action ... shall be raised by an appeal commenced within 30 days after the effective date of the ... resolution or similar action," and would apply with equal force to challenges styled as a "complaint in equity." Therefore, the mere fact that the challenge to the relevant motion was in the form of a "complaint in equity" rather than an appeal is of no consequence.

Consequently, if a dissenting member of Borough Council believed that the manner of adopting the motion was plagued by improprieties, he or she should have filed an appeal in his or her individual capacity as a council member and resident of Throop Borough, raising those allegations within the thirty-day appeal period prescribed by Section 5571 of the Judicial Code. After the thirty-day appeal period expired, the newly comprised Borough Council was precluded from making such a challenge.

 The error of law committed by the Court of Common Pleas in granting the Borough's motion for summary judgment is compounded by the fact that a trial court typically does not have the jurisdiction or authority to set aside a legislative act of a municipal governing body, such as a borough council, solely on the basis of "public policy," as the trial court did in this case. This exact principle was articulated by our Supreme Court in *Commonwealth ex rel. Millard Construction Co. v. Walton*, 236 Pa. 220, 84 A. 766 (1912):

> If there is any popular notion that the remedy for unwise legislation by councils and the mayor is to have the court declare that in their judgment the ordinance is unwise, vicious and prejudicial to the interests of the public, and therefore void, that notion cannot be removed too soon.... If the legislation is beyond their power or void by reason of improper passage it can be so declared, and will be, but if it relates to a subject-matter that councils have authority to act upon, and is passed in a legal manner, their act, when approved by the mayor, becomes the official act of the municipality. The controller and the court may not approve of, or be in sympathy with the policy of it, but neither can make it ineffective.

*Id.* at 222–23, 84 A. at 767; *see also Appeal of the Borough of Schuylkill Haven*, 179 Pa. Superior Ct. 508, 118 A.2d 242 (1955); *Vare v. Walton*, 236 Pa. 467, 84 A. 962 (1912) (stating that "an ordinance ... once passed by councils and signed by the mayor, if within the power given by the legislature to it, is a final and accomplished act, and must stand till repealed, and the power to repeal does not lie with the court"). Although it may be arguable whether or not the Board's action in adopting the 1993 contractual amendments constituted a "legislative" act, it was certainly a permissible act falling within the broad language of the enabling provision contained in Section 1006 of the Borough Code:

> It shall be the duty of the borough council:
>
> ....
>
> (3) To enact, revise, repeal and amend such bylaws, rules, regulations, ordinances and resolutions ... as it shall deem beneficial to the borough....

53 P.S. § 46006. As this Court stated in *Almy v. Borough of Wilkinsburg*, 53 Pa. Cmwlth. 46, 416 A.2d 638 (1980), "As long as council acts within the scope of its power and does not violate any law of the Commonwealth, ... we will not pass upon the wisdom of the actions taken or the policies set by council." *Id.* 416 A.2d at 643.

Clearly, Borough Council's action in giving up its right to select trustees, thereby relinquishing control over the Fund, is not an act violative of the law and was, as the trial court found, a permissible proprietary function of a borough council. Thus, the Court of Common Pleas could not set aside Borough Council's passage of the motion on public policy grounds, because it is not for the courts of this Commonwealth to delve into the reasonableness of such actions.

Accordingly, for the foregoing reasons, the order of the Court of Common Pleas is reversed, and the Complaint in Equity filed by the borough is hereby dismissed with prejudice.

### ORDER

NOW, February 26, 1998, the order of the Court of Common Pleas of Lackawanna County in the above-captioned matter is hereby reversed, and the Complaint in Equity is hereby dismissed with prejudice.

COLINS, President Judge, and SMITH, J., dissent.